## H. C. McPike, administrator, etc., *v*. W. C. Wells, administrator, etc.

1. **Federal and State Courts.** *Concurrent jurisdiction. Res judicata.*

    The administrator of a non-resident heir, owner of one of eight bills single for the purchase-money of land secured by an express lien reserved in the deed by which eight heirs conveyed, can maintain his bill to enforce the lien in a chancery court of the State where the land lies, notwithstanding the United States Circuit Court for that State, on a bill in equity by creditors of the ancestor to which this heir was not a party, has decreed the land sold to pay debts and the residue paid to a person to whom the seven other heirs had assigned their bills single.

2. **Same.** *Rule as to prior possession.*

    Although the Federal court, in the suit to which he was not a party, has decreed his rights to another, the administrator of the eighth heir need not resort to that court for redress. The rule that no other court has the right to interfere with the possession of a subject of litigation in a court of concurrent jurisdiction, does not apply after the litigation in the first court is ended.

3. **Federal Courts.** *Equity jurisdiction. Parties. Res inter alios acta.*

    The equity jurisdiction of the Federal courts is coextensive with the English system as administered in the High Court of Chancery, and, being subject to neither limitation nor restraint by State legislation, is uniform throughout all the States, and may be broader than that of the State courts. But one not a party to a bill in equity in the Federal court by service or appearance is not concluded by the decree.

4. **Parties.** *Representative suits. Persons beyond jurisdiction.*

    Both in England and in this country, in the State and Federal courts, it has always been a principle that all persons interested in the litigation should, if practicable, be brought before the court. The only relaxations of the rule are representative suits, for or against a few, who represent many having a like common interest, and suits where the court can do justice between the litigants before it, in the absence of one who resides beyond the jurisdiction.

5. **Same.** *Where absent person a necessary party.*

    If the non-resident and absent party is so concerned in the subject-matter that a decree between the immediate litigants cannot be made without seriously affecting his rights, the court will refrain from further proceedings.

6. Same.  *Practice in Federal courts, under U. S. Rev. Sts. § 737.*

The effect of act of Feb. 28, 1839 (U. S. Rev. Sts. § 737), is to permit a person, non-resident of the district or circuit, to come in of his own motion, and submit to the jurisdiction.  If he stays away, his rights are not concluded by any thing that may be done in the suit.

7. Same.  *How one shown to be party to a suit.*

For a person to be a party to the suit, the record must show it, the mere knowledge of its pendency and employment of counsel being insufficient.

8. Land of Intestate.  *Proceeding to sell under our statutes.  Notice to heirs necessary.*

In this State, the lands of an intestate descend immediately to the heirs, and when the necessity arises to deal with them as assets under our statutes, the heirs must have notice of the proceeding, and an opportunity to show cause against the sale.

9. Same.  *Not assets at common law.  Chancery no power to sell.  State legislation.*

At common law, lands descended are not assets.  Chancery has not jurisdiction to decree their sale at suit of a creditor, unless he has some specific lien or right therein.  It is by virtue of our State statutes, making such real estate assets, that it may be sold for creditors.

10. Same.  *Jurisdiction of Federal court.  State statutes.  Notice to heir.*

When the Federal court assumes to deal with lands as assets for creditors generally, it must refer to the legislation which has impressed that character upon them.  And if one of the heirs is not a party to the proceeding, it is impossible to transfer to a purchaser the entire title to lands in this State, as it was in the decedent at the time of his death.

11. Same.  *Creditor's bill in Federal court.  Proceedings.  In rem.  In personam.  Parties.*

In those States where the administrator represents realty as well as personalty, and the lands of a decedent may be sold without heirs being parties (which is not the case in this State), the proceeding to sell being *in rem*, a Federal court may decree a sale in the absence of the heirs.  *Quære*, Whether, in case of a creditor's bill, in the Federal court, to sell the land of an intestate in Mississippi, where one or more of the heirs were non-residents, and declined voluntarily to come in under the act of Congress, the court would stop, or go on and sell out the interest of those before it?

12. Same.  *Proceeding to sell.  In rem.  In personam.  Title of purchaser at sale.*

While, in those States where the proceeding is *in rem*, titles derived at such sales have been upheld by the United States Supreme Court, even where the heirs were not parties, *semble*, that as, by the interpretation put by our State courts on our statutes, the proceeding in

Mississippi is *in personam*, and all the heirs are necessary parties, the Supreme Court will follow, according to its settled doctrine, the interpretation of our State statutes as settled by our own tribunals.

13. Chancery.  *Complainant must do equity.  Case in judgment.*

Eight heirs sold land descended to them, taking eight bills single, one for each heir, secured by an express lien on the land.  Subsequently, under a decree, on a bill by creditors of the ancestor, one who had purchased the bills single of seven of the heirs bought the land and paid off the creditors.  *Held*, that the eighth heir, who was not a party to the decree, on subjecting the land to his bill single, must repay one-eighth of the debts.

Appeal from the Chancery Court of Hinds County.

Hon. H. R. Ware, Chancellor.

*F. A. R. Wharton*, for the appellant, argued the case orally.

*T. J. & F. A. R. Wharton*, on the same side, filed an elaborate brief making the following points : —

1. The proceedings and decree of the United States court in the case of *Hall et al.* v. *Mahone et al.* estopped the Chancery Court of Hinds County from the exercise of any jurisdiction in this cause, against the administrator and heirs of Abram McPike and the lands purchased by the latter under the proceedings and decree here referred to, even if Joseph G. Murphy, the appellee's intestate, was not in fact a party on the record to such suit.

(1.) The Circuit Courts of the United States have concurrent equity jurisdiction with the Chancery Courts of the States in which they hold their terms.

(2.) Such courts, in the exercise of their equity jurisdiction, are not governed by the rules of practice established by State Chancery Courts or State laws ; but are governed by the acts of Congress and the rules established by the High Court of Chancery of England.  *Smith* v. *Everett*, 50 Miss. 575, 581, 582.

(3.) Such United States courts, either under the act of Congress of 1789, or of Feb. 28, 1839, acquire jurisdiction over a person, as a defendant to a suit, who is not a citizen of the State in which they hold their terms, only upon a voluntary appearance and application by such non-resident person.  If he should so appear, the court, under the act of 1839, could proceed against him ; or, if he is not a necessary party, the

court may proceed without such appearance, in case his like interest is represented by a party who is a co-heir or co-distributee with him.   In such case, such non-resident co-heir or co-distributee would be entitled to come into that court and share in the benefits of its decree.   *Payne* v. *Hook*, 7 Wall. 425, 432; Story's Eq. Pl. § 89 and notes, § 127; *West* v. *Randall*, 2 Mason, 181; *Mallow* v. *Hinde*, 12 Wheat. 193; *Elmendorf* v. *Taylor*, 10 Wheat. 152; *Jones* v. *Andrews*, 10 Wall. 327, 333.

(4.) In case of concurrent jurisdiction, the court which first obtains jurisdiction of a cause has the right to decide every issue arising in the progress of it; and the Federal court could not permit a State court to withdraw from it the decision of such issues.   *Buck* v. *Colbath*, 3 Wall. 334, 341–345; *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, 632; *Miles* v. *Caldwell*, 2 Wall. 35, 39; *Smith* v. *M'Iver*, 9 Wheat. 532.

(5.) Those United States courts have equity jurisdiction in all cases, where such jurisdiction will save time, expense, and a multiplicity of suits, and settle finally the rights of all concerned in the litigation.   *Oelrichs* v. *Spain*, 15 Wall. 211, 228.

(6.) The decree of the United States court is conclusive on the appellee or his intestate, so far as to preclude them from seeking relief in the premises in any other court of equity, and to estop any such other court from exercising jurisdiction over the same matter.   By application to the United States court, the appellee could obtain, on proper showing, all the relief which his intestate could have procured had he been a party to the record.   But no other court, except the Supreme Court of the United States, on appeal or writ of error, can re-examine or take jurisdiction of the matters involved in said suit in the Circuit Court of the United States.

(7.) Unless the United States court, in the case of *Hall* v. *Mahone*, erred in decreeing that J. G. Murphy's share of the proceeds of the sale of the land should be paid over to McPike, as his assignee, Murphy obtained all in that suit that he could have received from any court in any proceeding to which he was a party.   If this error was committed, that court alone has the power to correct it, by ordering the money paid over to the proper party.   But no other court of equity

can give such relief, however justly it may be due to the estate of the appellee's intestate.

2. For all purposes of the present litigation J. G. Murphy must be regarded as a party to the suit of *Hall* v. *Mahone*, because, through T. C. Murphy, his agent, who was one of the co-heirs of Watson, and a co-grantor in the deed to Mahone, and a defendant on the record in said suit, he employed counsel to defend and protect his interests and rights under such suit. The power of attorney from J. G. Murphy to T. C. Murphy shows that the latter was therein authorized to represent the interest of the former in the case.

3. By his purchase of the land, Abram McPike became invested with such title as had vested in John F. Watson at the time of his death; and this was superior to all the liens created on this land, subsequent to his death, by E. F. Mahone, either in favor of J. G. Murphy and the other heirs of said Watson, or in favor of Hall and the other creditors. In other words, these lands descended from said Watson, incumbered with a liability for the payment of his debts; and a sale and conveyance of them by his heirs to Mahone could not prejudice the rights of his creditors to a priority in the payment of their debts.

The Circuit Courts of the United States have jurisdiction in equity to administer the estate of a deceased debtor, without regard to the provisions of the statutes of the States in which they hold their terms. The purchase of the lands by Abram McPike invested him with the entire title of John F. Watson, regardless of the fact that Joseph G. Murphy was not made a party. And it is immaterial whether the land sold for an amount exceeding the amount of debts due by the estate of said Watson, or whether the land was sold to a stranger or a party to the suit under which it was ordered to be sold. *Walker* v. *Walker*, 9 Wall. 743, 754; *Green* v. *Creighton*, 23 How. 90; *Harvey* v. *Richards*, 1 Mason, 381; *Oelrichs* v. *Spain*, 15 Wall. 228; *Comstock* v. *Crawford*, 3 Wall. 396; *Hyde* v. *Stone*, 20 How. 175; *Suydam* v. *Broadnax*, 14 Pet. 67; *Union Bank* v. *Jolly*, 18 How. 503. Were this not so, the United States courts would have jurisdiction of a bill by the creditors of an intestate only where his administrator

and all his heirs were parties to the record.    That could happen only when they were all citizens of the State in which the court held its terms or voluntarily became such parties.    Thus, in a great majority of cases, an important part of the jurisdiction conferred on the Federal courts by the Constitution and laws of Congress would be abrogated.    *Payne* v. *Hook*, 7 Wall. 425.

*T. J. Wharton*, on the same side, made an oral argument.

*W. Calvin Wells*, the appellee *pro se*, argued the case orally, and filed a brief, making the following points : —

1. It is not proved that J. G. Murphy ever was a party to the suit of *Hall* v. *Mahone*.    But, prior to the alleged employment of active measures by the counsel in the cause, before Abram McPike was admitted as a party, J. G. Murphy died; and then any authority which he had given counsel to represent him was revoked, and any decree against him, without revivor, was a nullity.

2. The question in this case is whether J. G. Murphy or his administrator is bound by the decree in a suit in the United States court sitting in equity, when neither he, in his lifetime, nor his administrator, after his death, was a party to said suit, and had no opportunity to contest the matters and things therein adjudicated, and especially when all the decrees in said cause were rendered after the death of J. G. Murphy. *Root* v. *McFerrin*, 37 Miss. 17, 46, is to the effect that it must appear on the face of the record that the court had jurisdiction, by the Constitution or the laws of the land, both of the parties and of the subject-matter, before it can deprive the citizen of his rights or property by its judgment.    The same principles are fully established by other cases.    *Campbell* v. *Brown*, 6 How. (Miss.) 234; *Gwin* v. *McCarroll*, 1 S. & M. 351; *Enos* v. *Smith*, 7 S. & M. 85; *Williams* v. *Childress*, 25 Miss. 78; *Steen* v. *Steen*, 25 Miss. 513; *Barney* v. *Baltimore City*, 6 Wall. 285; *Ford* v. *Doyle*, 44 Cal. 635; *Moseley* v. *Cocke*, 7 Leigh, 224.

Opposing counsel insist, however, that this is an exceptional case, and that the Federal court could not only decide conclusively between the parties before it, but also could affect J. G. Murphy, who was not a party to said cause.    To meet cases

like this, the act of Feb. 28, 1839, was passed, which, by its plain language, as well as by the interpretation frequently put upon it by the Supreme Court of the United States, means that the suit can proceed against parties beyond the jurisdiction of the court if they voluntarily appear, or without them if the court can adjudicate upon the interests of those before it without affecting the absent ones, yet always maintaining that the suit is not to prejudice any parties not before the court.  *Jones* v. *Andrews*, 10 Wall. 332; *Commercial Bank* v. *Slocomb*, 14 Pet. 65; *Louisville Railroad* v. *Letson*, 2 How. 557; *Clearwater* v. *Meredith*, 21 How. 492; *Payne* v. *Hook*, 7 Wall. 431; *Williams* v. *Bankhead*, 19 Wall. 571; *Hoe* v. *Wilson*, 9 Wall. 502.

3. The principle of concurrent jurisdiction is, that, whenever the litigation is ended, other courts are at liberty to deal with the subject according to the rights of the parties before them.  *Buck* v. *Colbath*, 3 Wall. 334.

4. It cannot be supported by any authority, and is repugnant to reason, that, as insisted by adverse counsel, because the other heirs were parties to the suit in the Federal court, and represented interests like that of Murphy's, he ought therefore to be bound.  What effect he might have had if a party to that litigation is not a proper matter for speculation. *Hoe* v. *Wilson*, 9 Wall. 502; Cooley Const. Lim. 486.

5. If it be true, as insisted, that we have a remedy in the United States court, which we deny, we answer that we also have our remedy in the State court, and the right to choose our forum.

6. Where the laws of a State vest the title of the realty in the administrator, so that he can dispose of the same without notice to the heirs, then a United States court having jurisdiction or holding courts in that State could decree a sale of the realty without notice to the heirs.  But where, as is the case in this State, the legal title to the land is vested in the heirs, and the administrator has no control over it without a regular proceeding in a court of competent jurisdiction giving him control for a specific purpose, the land cannot be sold in any court without notice to the heirs.  *New England Bank* v. *Newport Steam Factory*, 6 R. I. 154; *Galton* v. *Hancock*, 2 Atk.

434; *Hamilton* v. *Lockhart*, 41 Miss. 460. Immediately on the death of John F. Watson the title to the lands vested in the heirs, of whom J. G. Murphy was one. *Hollman* v. *Bennett*, 44 Miss. 326; *Root* v. *McFerrin*, 37 Miss. 46; *Campbell* v. *Brown*, 6 How. (Miss.) 234. By common law, neither courts of equity nor courts of law could subject the lands of a decedent to simple contract debts. 4 Kent Com. 420; 3 Black. Com. 430. No statute of the United States gives any court the power of administering estates so as to charge the debts of a decedent upon his real estate, and subject the same to their payment. The Federal courts, therefore, derive their power to decree the sale of these lands from the statute laws of the State of Mississippi as construed by the highest tribunal of the State. *Smith* v. *Union Bank*, 5 Pet. 518; Story Confl. Laws, §§ 524, 528; *Glenn* v. *Johnson*, 18 Wall. 476; *Barney* v. *Baltimore City*, 6 Wall. 280; *McCormick* v. *Sullivant*, 10 Wheat. 192; *Miles* v. *Caldwell*, 2 Wall. 43; *Watkins* v. *Holman*, 16 Pet. 37; 17 How. 9.

SIMRALL, C. J., delivered the opinion of the court.

The bill was exhibited by the personal representative of Joseph G. Murphy, deceased, against Edward F. Mahone and the personal representative and heirs of Abram McPike. It alleges that John F. Watson died intestate, seised and possessed of a large real estate in Hinds County, which descended to eight heirs, of whom the complainant's intestate was one. On the 20th of May, 1867, these heirs sold and conveyed to Edward F. Mahone all their right, title and interest in and to the estate, real and personal, of the intestate, for the consideration that he would pay the debts of the intestate, and also pay to each of the eight heirs, on the 1st of January, 1868, $6,000, to each of whom he had given a sealed note or bond for that sum and of that maturity. For the security of these several obligations a lien was retained in the deed. Abram McPike had become owner, by assignment, of all these notes or bonds, except the one payable to the complainant's intestate. The prayer of the bill was to subject the one-eighth interest in the land to the satisfaction of the complainant's debt.

The answer and cross-bill of H. C. McPike, administrator

of A. McPike, deceased, and as guardian for his infant heirs, sets up that in June, 1869, Hall and others filed a bill in the Circuit Court of the United States for the Southern District of Mississippi, sitting in equity, against the administrator of John F. Watson, deceased, and all the heirs of said John F. Watson, except the complainant's intestate, who was not a citizen and resident of Mississippi. The object of the bill was to rescind certain contracts, by which the complainants therein had conveyed or assigned to E. F. Mahone certain debts due them respectively from the estates of John F. Watson and one Cook, and thus to restore the complainants to their original rights as creditors of said estates ; or if not relieved in that mode, then that the mortgage executed by Mahone to them, embracing part of the lands, should be foreclosed.

That suit terminated in a decree for the sale of the lands, for payment, first, of the debts of John F. Watson, then of the bonds or sealed notes of E. F. Mahone to A. McPike, assignee of the heirs of John F. Watson. A. McPike had been permitted to become a party, so far as to assert his interest as assignee, as above stated. Joseph G. Murphy, one of the heirs of John F. Watson, was not a party on the record to that litigation. And it is not controverted, in this suit, that he had not assigned the note or bond of E. F. Mahone, which had been given him for his part of the consideration for the land. The controversy is as to the effect of the decree of the Circuit Court of the United States, sitting in equity, so far as it disposed of his interest to Abram McPike. It also appears that at the date of that decree Joseph G. Murphy was dead.

The appellee, the complainant in the Chancery Court, insists that, as to his intestate, Joseph G. Murphy, the decree of the Circuit Court of the United States, in equity, is null and of no effect; and that, therefore, he may, in the State court, foreclose the security given by Mahone, or reserved in the deed of conveyance to him, as though that decree had never passed. On the other hand, the appellant contends that the appellee could not exhibit an original bill in the State court for relief, but must resort to the Federal court, and there assert his rights to the proper redress, by procuring a modification of the decree, and a refunding, by the administrator of

Abram McPike, of what was paid, on the assumption that he
was assignee of the note or bond payable to Joseph G.
Murphy.

The Supreme Court of the United States, in construing
the extent of judicial power conferred by the third article of
the Federal Constitution, has uniformly held that the equity
jurisdiction granted was coextensive with the English system,
as administered in the High Court of Chancery in that coun-
try, and was not the local body of equity law, which the
several States might adopt and change at pleasure.    The
equity cognizance of the Federal tribunals may therefore be
broader than that of the State courts, as was illustrated by the
case of *Payne* v. *Hook*, 7 Wall. 425.   Although it belonged to
the county court, which had probate jurisdiction in Missouri,
to redress the grievances complained of, if the plaintiff had
been a citizen of Missouri, yet because she was a citizen of
Virginia, and had, on the ground of citizenship, access to the
Federal tribunal, she was entitled to relief, " if the bill, ac-
cording to the received principles of equity, states a case for
equitable relief ; " and that, " notwithstanding the peculiar
structure of the Missouri probate system." The equity juris-
diction conferred on the Federal courts is subject neither to
limitation nor restraint by State legislation, but is uniform
throughout the States.   *Green* v. *Creighton*, 23 How. (U. S.)
90 ; *Robinson* v. *Campbell*, 3 Wheat. 212 ; *United States* v.
*Howland*, 4 Wheat. 108.

It has always been a principle of the Court of Chancery in
England and in this country, that all persons interested in the
litigation should, if practicable, be brought before the court.
That rule has always been recognized as obligatory on the
Federal courts.   The only relaxations of it are where parties
are very numerous, in which case some may sue on behalf of
all.   The case becomes a representative suit for or against
a few who represent the many having a like common interest.
Another is where the process cannot reach a particular person,
who resides beyond the jurisdiction ; yet if the court can
decide between the litigants before it, and do them justice, it
will go on to final decree.   *Elmendorf* v. *Taylor*, 10 Wheat.
152, 168.

In *Hoe* v. *Wilson*, 9 Wall. 501, the decree was reversed because the heirs-at-law of Ann R. Dermott were " indispensable parties," and were not before the court. Said the court: " No relief can be given in the case before us which will not seriously and permanently affect their rights and interests." The rule was again enforced in *Railroad Co.* v. *Orr*, 18 Wall. 471, where the court refused to proceed until all the bondholders (fifteen persons) were made parties, holding that it was not a proper case for a representative suit.

In a late case, *Williams* v. *Bankhead*, 19 Wall. 571 (in 1873), the court clearly stated the rule, with its limitations, thus : " All ought to be made parties who are interested in the controversy." But the interests of absent parties must be considered as to their quality and nature, to determine whether such persons are necessary parties or not. The learned judge declared the true distinction to be, " Where the person will be directly affected by a decree, he is an indispensable party." But " where he is not interested in the controversy between the immediate litigants, but has an interest in the subject-matter which may be conveniently settled in the suit, and thereby prevent further litigation, he may be a party or not, at the option of the complainant." A practical application of these tests was made, the point, on which the decision turned, being whether the widow of Branch was an " indispensable party " or not. It was held that she was. The decree was, that if $3,666.66 was not paid, then the plantation should be sold. Mrs. Branch was interested in that fund, and would be " *directly* affected by the decree." The decree was reversed, although Mrs. Branch was not a resident of Arkansas, in which circuit the suit was brought, and not amenable to its process. It would follow, therefore, that if the non-resident and absent party was so concerned in the subject-matter that a decree between the immediate litigants could not be made without seriously affecting the absent party, then the Federal court would refrain from further proceeding.

The act of the 28th of February, 1839, was enacted to cure the evil resulting from the necessity of declining to relieve, where an indispensable party was absent, by allowing the *voluntary* appearance of the absent person. If such person,

however, does not elect to appear, and submit his rights to adjudication in that suit, then " the judgment or decree rendered therein shall not conclude or prejudice other parties not regularly served with process nor voluntarily appearing to answer." U. S. Rev. Sts. § 737. The statute *permits* a person, non-resident of the district or circuit, to come in, of his own motion, and submit to the jurisdiction. If he stays away, his rights are not concluded by any thing that may be done in the suit. The administrator of Joseph G. Murphy might have availed of the privilege of the statute ; but he was not obliged to do so. That was the very point presented in the case of *Buck* v. *Colbath*, 3 Wall. 334. Colbath sued Buck in trespass for taking his goods. Buck justified the seizure under a process of attachment against certain parties, in his hands as marshal of the district. It was insisted that Colbath was obliged to prefer his claim to the goods in that suit, because the Federal court had authority to dispose of all the questions involved. That position was conceded by the court, subject to the limitation that the rule " is confined in its operation to the *parties before the court*, or who may, if they wish to do so, come before the court and have a hearing on the issue so to be decided." But, inasmuch as Colbath did not intervene in the suit in the Federal court and litigate his right, he was not precluded from bringing the marshal before the State court, to answer for the trespass of seizing his property under process against another person. The question of his title was not involved in the other suit, to which he was not a party.

As to the effect of the act of 1839, in *Jones* v. *Andrews*, 10 Wall. 327, 332, the court says, that, by implication, it confers jurisdiction over non-residents of the district, if they voluntarily appear. If they are necessary parties and do not appear, then the difficulty remains as it was before the act of 1839.

It was said, however, that Joseph G. Murphy, the intestate, was in effect a party to the suit in the Federal court by reason of his employing counsel. It was held, in *Williams* v. *Bankhead*, 19 Wall. 570, that the record *must* show that an individual was a party to the suit. The mere knowledge of the pendency of a suit, and the employment of counsel, are not

sufficient; there must be an actual appearance, and a note of it in the proceedings.

The case chiefly relied upon by the appellant is that of *Payne* v. *Hook, ubi supra.* There the question was, whether relief could be granted to a part of the distributees, against the administrator and his sureties. Those not joined were citizens of Missouri, and would have taken away the jurisdiction. It was answered that they were not necessary parties, and that substantial justice might be done, and multiplicity of suits avoided, by allowing the other distributees to come in, through a reference, or in some other way, and share in the proceeds. That case harmonizes with the others since the act of 1839, in holding that the other distributees might come in, if they chose, and reap the benefit of the litigation.

Without further elaboration the principles, settled by the Federal judiciary, accord with those of the English chancery, and those often declared in this State, in establishing that a final decree cannot be made in the absence of an indispensably necessary party; but that if right and justice can be done between the immediate litigants without serious prejudice to the absent party, a decree may be made; that, where citizenship is the sole ground of Federal jurisdiction, the court will not proceed to final decree where there is an absent person who would be injuriously affected by the decree on account of interest in the subject-matter; and that, lastly, a person not a party by service of process, or voluntary appearance, is not concluded by the decree, but may sue in respect of the same subject in the State court. The complainant's intestate, or his administrator, not being a party in the Federal court, is not affected by its proceedings and decree.

But it was also argued for the appellant that the decree of the Federal court was for the sale of the lands of an intestate, to pay debts; and that therefore it had the effect to pass the title of all the lands, of which Watson died seised, to McPike, the purchaser.

It has been settled, by a long line of decisions in this State, that the lands of the intestate descend immediately to the heirs; and that when the necessity arises to deal with them as assets, the heirs must have notice of the proceeding, and an

opportunity to show cause against a sale. The power of the
administrator to resort to the real estate, and make it assets
for creditors, is purely statutory. Whenever that necessity
arises, then, on notice to the heirs, all the lands, or so much
thereof as may be needed, may be sold. A court of chancery
has no inherent jurisdiction to decree a sale of lands, unless it
is specifically burdened by a testator with the debts, so as to
create a charge upon it, — that equity may be made available
by a creditor. But in intestacies, independent of legislation,
the court has not such power. At common law, lands descended
were not assets at all. Specialty creditors, where the heir was
bound in the bond or covenant, could reach them. It is by
reason of State legislation that they are made assets.

When, therefore, the Federal court assumes to deal with
lands as assets for creditors generally, it must refer to the
legislation which has impressed that character upon them,
and, in addition, must have jurisdiction of the thing as to
its *situs*, and of the parties in whom resides the legal title.
The land descends at once to the heir, subject, however, to the
right, when the personalty is exhausted, of resorting to it, to
pay creditors. The theory and intent of the legislation on the
subject is, that the heirs must have notice of the proceeding,
and an opportunity to show cause against the sale. The State
court would not proceed to a decree, unless all the heirs,
where there are several, have been served with notice, actual
or constructive; for the statute plainly intends that the entire
title to the land (or so much as is necessary) of which the an-
cestor died seised, and which has descended, shall be sold.
It would not order a sale, where only part of the heirs were
before the court. Such decree would be grossly erroneous,
to say the least. We have one case which goes the length
of holding that it would be void and no title would pass to
the purchaser. *Hamilton* v. *Lockhart*, 41 Miss. 460, 478, 479.
Whether that case rests upon sound principle and should be
followed, it is not necessary now to consider. Certainly such
decree could have no greater effect than to bind those who
were parties to the suit.

The Federal court would find itself greatly embarrassed, in
making sales of the lands of an intestate to pay debts, where

one or two, or more, of the heirs were non-residents and declined, under the act of 1839, to come voluntarily into the suit.   It would be impossible to transfer the entire title to a purchaser as it was in the decedent at the time of his death. Whether it would stop, and decline to decree, for that reason, and thereby harmonize with the State decisions; or whether it would go on, and sell out the interest of those before the court, is a grave question for that tribunal to consider.

In many of the States, the proceeding by the administrator to sell the lands of the intestate, to pay debts, is regarded as a proceeding *in rem;* and the decree confers authority, and the title passes, whether the heir has been notified or not.   In those States, although the statutes, in some instances, require notice, that feature has been treated as directory merely.   If not complied with, still the title would vest in the purchaser. The Supreme Court of the United States has repeatedly upheld such titles.   But in this State, from the earliest times, the courts have held such proceedings to be *personal* suits against the heir, for the purpose of divesting the title descended (to which he may make full defence); and that the heir must therefore be served, actually or constructively, with the prescribed notice. It is only by virtue of the statute, that the administrator can deal with the realty as assets; and we suppose that it is settled doctrine in the Supreme Court of the United States to follow the interpretation of State statutes as settled by their own tribunals.

The complainant makes no objection to the decree of the Federal court, except that he is not bound by it.   He does not controvert the right of Abram McPike's heirs to seven-eighths of the land.   As a stranger to that litigation, he prefers his suit in the State court to have the lien, retained in the conveyance to Mahone, enforced to pay the purchase-money to his intestate.   Plainly that lien is inferior to the right of the creditors of John F. Watson to get payment out of the lands descended.   So far as those creditors were not paid by Mahone, or did not release the estate of Watson and accept the assumpsit of Mahone, they have a preference over the complainant's lien.   That preference was recognized and provided for in the decree of the Federal court.

The practical result which has been accomplished under that decree has been, that Abram McPike has become owner of seven-eighths of the land; and enough of the money realized by the sale has been applied to pay the debts of the estate. McPike, being owner by assignment of seven of the obligations of Mahone to the heirs, and being also purchaser under the decree, has extinguished the debts against Watson's estate. It is clear, therefore, that McPike's administrator and heirs should shift one-eighth of these debts on the interest of Joseph G. Murphy, represented by the complainant. There should be deducted from the debt to the complainant, for the benefit of the estate of Abram McPike, one-eighth of the indebtedness of Watson's estate. That has been provided for in the decree.

We think the decree is settled on just principles, wherefore it is                                        *Affirmed.*

The appellant then filed a petition for reargument.

On the petition for reargument, CAMPBELL, J., delivered the following opinion of the court: —

The Circuit Court of the United States for the Southern District of Mississippi decreed the sale of land, on which the intestate of the appellee had a lien, without his being a party to the suit, and ordered the amount due to said intestate to be paid to another person supposed to be entitled to it, but who in truth, as now appears, had no right to it. Said intestate was a non-resident of the State of Mississippi. His administrator exhibited his bill in the Chancery Court of Hinds County, where the land is situated, to enforce said lien for purchase-money, which is an express lien reserved in the deed by which the land was conveyed. The right of the Chancery Court to enforce this lien is denied, because the Circuit Court of the United States, in equity, at the suit of creditors of the ancestor of said intestate, had decreed this land to be sold to pay debts, and for any residue of the proceeds of the sale of said land to be paid over to one who was assumed to be the assignee of obligations given by the purchaser of the land from the heirs of said ancestor. Said heirs had sold and conveyed

the land descended to them to Mahone, taking bills single, one for each, for the purchase-money, and reserving a lien in the deed to secure these obligations. All of said heirs, except the appellee's intestate, had assigned their bills single to McPike. The appellee's intestate had not assigned his, but held it. On Watson's death, the legal title of the land vested in his heirs, of whom the appellee's intestate was one, and they put the legal title in Mahone, charged with an express lien reserved to secure what was due them severally for the purchase-money. Unquestionably, the appellee is entitled to enforce the lien on the land to pay the sum due to his intestate, if he is not concluded by the decree of the United States Circuit Court, in equity. That said intestate was not a party to the suit in which that decree was rendered, would seem to be a conclusive answer to the bar alleged to arise from that decree. It is a rule of universal application and unquestioned authority in all courts, State and Federal, both of law and equity, of original and general jurisdiction, and of inferior or special and limited jurisdiction, that no person shall be concluded or affected by a proceeding to which he is not a party, except as to proceedings *in rem;* and no courts have more uniformly and strictly adhered to this manifestly just doctrine than the courts of the United States.

The idea that the appellee's intestate was concluded by the decree to sell land on which he had a lien, equal to a mortgage, and to transfer his rights to another, in a suit to which he was not a party, shocks every one's sense of justice and ideas of fundamental principles ; and it is not claimed that such party is absolutely concluded and estopped by this appropriation of his rights to another, — this depriving him of his property without due course of law ; but that he must resort to the United States court, and seek his redress there ; and cannot have an enforcement of his lien in the State court, which it is admitted would be open to him but for the fact that the United States court had decreed his rights to another in the suit to which he was not a party. The decree of the United States court was absolutely void as to the appellee's intestate ; and how then can it be invoked against him for any purpose ? Grant that he might have applied to the United

States court, why could he not resort to the State court? Is
the matter of his suit *res judicata* by the decree in the suit to
which he was not a party? If not, what renders it improper
for the State court to enforce his lien? Was his lien divested
and destroyed by the decree of the United States court?
This lien is equal to a mortgage. Was it ever held that the
rights of a mortgagee could be destroyed by a sale of the sub-
ject of the mortgage by a judicial proceeding to which he was
not a party? It is said that the lands of Watson, the ances-
tor, were assets for the payment of his debts; that his heirs
took them, subject to this legal charge of liability, for the
debts of their ancestor; that the conveyance of the land by
the heirs vested title in their vendee subject to the paramount
claims of said creditors; that the United States court had the
right to subject the land to the claim of creditors, and that a
sale under its decree vested in the purchaser the title of Wat-
son, the ancestor, as it was at his death, freed from any claim
of his heirs or their vendee. We may concede all that is thus
claimed, except that it was competent for the United States
court to divest the title or affect the rights of a party out of
its jurisdiction, and not appearing in the suit. It has never
been intimated by the Supreme Court of the United States,
nor by any Circuit Court of the United States, so far as we
can find, or as counsel have informed us, that the rights of a
party not within the jurisdiction of the court could be preju-
diced by a decree in a suit in which he did not appear, or was
not made a party by process. No act of Congress or rule of
equity, as prescribed by the Supreme Court of the United
States, lends countenance to such a suggestion. On the con-
trary, numerous decisions negative it, and every act of
Congress and rule of equity excludes it.

It is undoubtedly true that the Federal courts have afforded
relief to those who had standing in court as far as they could
acquire jurisdiction of parties. They have not refused relief, be-
cause on account of the absence of parties whom they could not
reach out of the State and bring in, it was not in their power
to grant full relief. In order to avoid ousting their jurisdic-
tion of the case before them, they have dispensed with parties,
*not to proceed to decree against them, because they could not*

*reach them,* but to do without them, and scrupulously declining to touch their interests, have done all they could to administer justice between those before them.

It remains yet to be announced by a court of the United States that a Circuit Court of the United States can, by its decrees, prejudice the rights of those not made parties to its proceedings, and who could not be. When such a doctrine shall have been proclaimed authoritatively by the Supreme Court of the United States, we will yield to it as far as duty shall require, but cannot view it in other light than as a crowning act of judicial usurpation, of which that august tribunal will never be guilty.

The case of *Payne* v. *Hook,* 7 Wall. 425, relied on by counsel, lends no countenance to the proposition contended for. It was a suit by a citizen of Virginia, in the Circuit Court of the United States in Missouri, for distribution of an estate being administered in Missouri. It was objected that co-distributees were not made parties. They were said to reside in Missouri, and joining them would oust the court of jurisdiction of the suit. The court said, in effect, as this suitor, a citizen of Virginia, has the right to sue in the Federal court, and has done so, she shall not be turned out for want of other parties, whose joinder in the suit would have that effect, and we will go on in this suit, and enforce the right of this suitor who has invoked our aid, as far as it can be done without prejudice of the interests of those not parties. The suit was against the administrator and sureties on his bond, for discovery and account. That was not a suit to sell land and to divest the lien and destroy the rights of a party who was a citizen of another State, and beyond the jurisdiction of the court. Nor does the opinion intimate that the co-distributees would be in any manner affected by the decree in that case, or that they would be barred of their remedy in the State court. No such inference from that opinion is admissible. That case is a strong authority in support of the proposition that the appellee's intestate was not in any manner affected by the decree in the United States court.

In *Robertson* v. *Carson,* 19 Wall. 94, counsel, in contending that certain persons were not necessary parties to the suit,

pressed on the attention of the court the case of *Payne* v. *Hook ;* but the court held that the cause could not proceed without an absent party held to be necessary.

In *Mallow* v. *Hinde*, 12 Wheat. 193, 198, the Supreme Court of the United States, in speaking of a case where an indispensable party was not before the court, observed : " We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdiction. We put it on the ground that *no court can adjudicate directly upon a person's right without the party being either actually or constructively before the court.*"

In *Shields* v. *Barrow*, 17 How. (U. S.) 130, 141, the court, in construing the act of Congress of Feb. 28, 1839 (5 Stat. at Large, 321), and the 47th rule in equity, prescribed by the court under that act, says, " It remains true, notwithstanding the act of Congress and the 47th rule, that a Circuit Court can make no decree affecting the rights of an absent person ; " and this was said with direct reference to an order of a Circuit Court to force certain absent parties to come into the court and assert their rights.    It must be remembered that the decree in the United States court relied on in this case was made before the act of June 1, 1872, and under the act of 1839.    In *Coiron* v. *Millaudon*, 19 How. (U. S.) 113, this doctrine was again plainly announced.    In *Clearwater* v. *Meredith*, 21 How. (U. S.) 489, 493, the court, referring to the act of 1839, *supra*, said, " The defendants who are citizens of other States are not prejudiced by this procedure, but those on whom process has been served, and who are made amenable to the jurisdiction of the court ; " and, speaking of a state of case where jurisdiction could not be exercised between parties, say, " No prejudice to the rights of either could be done."

In *Barney* v. *Baltimore City*, 6 Wall. 280, previous decisions are reviewed and approved, and it is distinctly declared that the rights of an absent party are in no sense affected by a decree in a suit to which he was not a party.

We think we can safely affirm that there never has been an utterance by the Supreme Court of the United States, or a Circuit Court, at variance with these propositions.    Not even a

*dictum* can be found to sanction what is seriously urged in this argument of counsel as solemn law.

But it is asserted that the appellee was compelled to resort to the Federal court, which had taken jurisdiction of the case, and made a decree in it because of a rule applicable to courts of concurrent jurisdiction. *Payne* v. *Hook,* 7 Wall. 425, is cited as sustaining that view ; but we think it does not even vaguely hint at such a proposition. *Buck* v. *Colbath,* 3 Wall. 334, 342, is relied on, too, by counsel, as directly in point. A careful examination of it shows that it utterly overthrows the doctrine contended for by counsel here ; and, while announcing the rule that no other court has the right to interfere with the possession of a subject of litigation in another court of concurrent jurisdiction, expressly declares that "*whenever the litigation is ended, or the possession of the officer or court is discharged, other courts are at liberty to deal with it according to the rights of the parties before them.*" Further on in the opinion, the court, after criticising remarks in *Freeman* v. *Howe,* 24 How. 450, on the subject that the court first obtaining jurisdiction of a cause has a right to decide every issue arising in its progress, and that a Federal court could not permit the State court to withdraw from the former the decision of such issues, uses this language : " *It is confined in its operation to the parties before the court, or who may, if they* wish to do so, come before the court, and have a hearing on the issue so to be decided," — not that absent parties *must* come in. In *Traders' Bank* v. *Campbell,* 14 Wall. 87, 95, considering a decree without parties whose interests were involved in the suit, the court says, " *They will be at liberty to bring any suit they may be advised to, after this suit is disposed of, . . . and their rights will not be precluded by the present decree.*"

In *May* v. *LeClaire,* 11 Wall. 217, 236, it is said : " In this case more than half the residuary devisees of Antoine LeClaire are not before us. We cannot, therefore, decree the conveyance of real estate."

Counsel err in placing us in conflict with decisions of the Federal judiciary, and in assuming that we seek to limit the equity powers of the United States courts, and deny their right to administer the assets of a decedent except in con-

formity to State statutes. We do no such thing; but we do affirm that it is by virtue of State laws that land is assets to pay debts,·and that State laws regulate descent and title to real estate, and that, in exercising equity powers derived by grant of Congress, the Federal courts will, as they have ever done, have due regard to the holder of the legal title of land, and decline to attempt to divest it by decree in a suit to which the owner is not a party. In those States where the administrator represents realty as well as personalty, and where land of a decedent may be sold without heirs being parties (as is the case in several States), the proceeding to sell land being a proceeding *in rem*, a Federal court might decree a sale of land in the absence of the heir; but the utmost extent to which the Supreme Court of the United States has gone in this respect is that it will afford relief to those rightfully invoking its aid, as far as it can do so according to settled chancery practice, as against parties whom it can bring before it, or who *voluntarily* appear before it.

It is thus shown that we are not in antagonism to the courts of the United States, but in perfect accord with them, on this subject. We do not question any right ever claimed by such courts to deal with the estates of decedents. We admit the paramount claim of creditors to subject the real estate of a decedent, as against his heirs and their vendees, to payment of the debts of decedent. We simply follow the lead of the Supreme Court of the United States in its repeated utterances, that no court can adjudicate directly upon a person's right without his being either actually or constructively before the court; and affirm that the appellee's intestate was not concluded nor estopped, nor in any way affected, by the decree relied on; that his rights remained afterwards as though that decree had not been made; that he, and after his death his administrator, had the right to proceed in the chancery court of the State to enforce his admitted lien on the land; and that the decree in the case to which he was not a party is no barrier to the remedy by the State court. We have not questioned the right of the Circuit Court of the United States to decree a sale of the land as to such parties as it acquired control over by process or appearance, but have expressly said that it

is a question for that court to consider, whether, with only part of the heirs before it, it will proceed to decree a sale of their interests; and, from the practice of such courts to administer relief as far as they can with the parties before them, we suppose they will, in such cases, decree sale of the interests of all parties before them. The act of June 1, 1872, authorizing constructive service of process by publication in the Federal courts, arose from the difficulty incident to the inability of those courts to proceed in many cases without absent parties. Under that act the Circuit Courts of the United States will find no difficulty in bringing in all parties in interest. We have re-examined, with much research, the subject involved in this case, because of the earnestness of counsel in urging a re-argument, and we have not been led to entertain a doubt of the correctness of the conclusion reached after the former argument; and, deeming it impossible that any other result could be reached upon another argument, we are constrained to deny the reargument asked for.