JOHN DILLINGHAM v. THE STATE OF OHIO.

The 83d section of the municipal corporation act of May 3d, 1852, confers upon the police court of cities of the first class jurisdiction to try and determine a charge of obtaining money or goods by false pretenses.

Such charge may be preferred by information filed in that court, and by the prosecuting attorney thereof.

The constitutional right of trial by jury is not infringed, when the option is given to the accused to have the issue tried by the court or the jury, and he submits the cause to the court.

A false pretense, within the meaning of the statute, must relate to a past event or an existing fact. Any representation or assurance in relation to a future transaction, is not included.

The indictment or information must aver all the material facts which it is necessary to prove to produce a conviction; and with such reasonable certainty as to advise the accused what he may expect to meet on the trial.

Whether procuring by false pretenses the signature of a party to a negotiable promissory note or bill of exchange, which he is ultimately compelled to pay, is an offense within the statute—*quere.*

IN error to the Police Court of Cincinnati.

*A. E. Gwynne,* and *Chase & Ball,* with whom was *E. L. Pierce,* for plaintiff in error.

*Attorney General,* for the State.

RANNEY, C. J. The plaintiff in error was accused by information in the police court of Cincinnati, of the offense of obtaining money by false pretenses. He pleaded not guilty to the charge, and elected to submit the trial of the issue thus made to the judge of that court, by whom he was found guilty and sentenced. The present writ is prosecuted to reverse that sentence; and in the numerous assignments of error, exception is taken to the jurisdiction of the court, to the regularity of its proceedings, and to the sufficiency of the information.

The argument of the case, as well as its investigation by us, has been very much complicated and prolonged, by a reference to various local enactments, at various times in force in Hamilton

county. Whether these enactments are still in force, and if so, what possible bearing they might have upon prosecutions for this offense, we do not deem it important to discuss or consider; being fully satisfied that the general laws of the State are in force in that county, and that the present case must be disposed of in accordance with their provisions.

1. Had the court jurisdiction? By the 72d section of the municipal corporation act of May 3, 1852, (Swan's Stat. 972,) the qualified voters of cities of the first class, are required to elect a police judge to hold his office for two years, and to have such powers and perform such duties as are prescribed in that act. By the 83d section, he is empowered to hold a court, " to be styled the *police court,*" which it is declared shall be deemed a court of record; and is invested with jurisdiction to hear and determine " all cases of petit larceny, and other inferior offenses of every description, committed within the limits of the city, or within one mile thereof, and which the constitution, or some law of the State, does not require to be prosecuted by indictment or presentment of a grand jury." And it is further provided, that, " for the proper exercise of such jurisdiction, such police court shall have, in respect to the issuing of process, the preserving order, and punishing contempts, the administering oaths, the summoning and empanneling juries, or otherwise, all the powers incident to a court of common pleas, in the hearing and determining of like cases."

Now, it is clear that this was a court, " inferior to the Supreme Court," established by the general assembly in all the counties of the State which contained a city of the first class; and it is equally clear, that it was constitutionally competent for that body to invest such a court with original criminal jurisdiction. Whether the court was well or ill qualified to discharge such duties, or whether its course of proceeding was summary or otherwise, were matters which should have engaged the careful attention of the legislature, but which are wholly unimportant in this court. With the authority to confer the power, the inquiry here must be confined to the question, has it been conferred?

The plaintiff's counsel insist that it has not: 1st, because the

constitution required the prosecution for this offense to be by indictment or presentment of a grand jury ; and 2d, because a statute law of the State, then in force, required that mode of prosecution.  As the police court was not provided with a grand jury, and as it was only invested with jurisdiction over those offenses which neither the constitution, or any law of the State, required to be prosecuted by indictment, it is manifest that the jurisdiction cannot be sustained, if either of these positions is well founded in point of fact.  But we think a careful examination of the constitution, and the statutes in force when this conviction was had, will show that they are not.  By the 10th section of the 1st article of the constitution, a presentment or indictment of a grand jury is dispensed with, "in cases of petit larceny and other inferior offenses."  How such offenses should thereafter be prosecuted, depended entirely upon legislative discretion.  But, it is said, this dispensation only extends to offenses inferior in grade to petit larceny.  We cannot adopt such a construction.  Indeed, to do so, would be to leave the whole matter to mere conjecture.  It is very evident that petit larceny is simply named as one of a class of offenses ; and equally so, that the class was intended to embrace all offenses for which a punishment less than imprisonment in the penitentiary is provided.  This was a classification so long used in our laws, and so well understood, as to leave no doubt that it was the one intended to be adopted by the convention.

The offense of obtaining money, etc., by false pretenses, was then, and still is punished by the 12th section of the act of March 8, 1831.  The 52d section of that act required all prosecutions under it to be by indictment in the court of common pleas.  This section was expressly repealed by the 31st section of the act of March 14, 1853, " defining the jurisdiction and regulating the practice of probate courts," which took effect July 1, 1853.  This prosecution was commenced after this act had taken effect.  It is thus seen, that at the time this prosecution was pursued, there was no *law* in the State requiring this offense to be prosecuted by indictment or presentment.  How the question involved in this case might have stood, prior to the taking effect of this act, it is

unnecessary to determine. Upon no fair construction, can the power conferred upon the police court be confined to cases in which no indictment was required at the time the municipal corporation act was passed. If at the time the jurisdiction is entertained no such requisition exists, the power of the court is fully established.

2. The case of *Daily* v. *The State*, 4 Ohio St. Rep. 57, has disposed of the question as to the constitutional power of the court, at the election of the defendant, to try the issue, and the subject needs no further discussion. It is there shown that the constitutional *right* of trial by jury is not infringed, when the accused may have it or not, at his election ; and it is only necessary to add, that the expression of opinion in several cases under the former constitution, arose, not from any supposed infringement of the constitutional right, but because no law then existed conferring upon the court the power to try the issue upon the plea of not guilty.

3. The only remaining question in the case, relates to the sufficiency of the information. As a general rule, there can be no doubt that an information must contain all the *substantial* requisites of an indictment ; and just as little, that in accusations for this offense, it is not sufficient simply to follow the language of the statute. The particular pretense or pretenses by which the money is obtained, must be specifically stated, and the indictment or information must aver all the material facts which it is necesary to prove, to produce a conviction, and with such reasonable certainty as to advise the accused what he may expect to meet on the trial.

In the construction of statutes like our own, this further proposition has come to be perfectly established—that the pretense or pretenses relied upon must relate to a past event, or an existing fact ; and that any representation or *assurance* in relation to a future transaction, however false or fraudulent it may be, is not, within the meaning of the statute, a false pretense which lays the foundation for a criminal prosecution. *Commonwealth* v. *Drew*, 19 Pick. 185.

In the light of these well settled principles, we are now pre-

pared to answer the question : Does the information in this case, with reasonable certainty, charge upon the accused an offense within the statute ?   The information alleges that the plaintiff in error procured the indorsement of one David Carroll upon a bill of exchange, drawn by himself upon his son, C. M. Dillingham, by whom it was accepted, and which Carroll was ultimately compelled to pay.   It is alleged that this indorsement was procured by fraudulently representing that the acceptor was engaged in an extensive spoke manufacturing business, and would be abundantly able to pay the bill when it should mature ; that he, the plaintiff in error, *could* negotiate it in the Lafayette Bank, and *would* then, with the proceeds, pay a certain other bill, then about maturing, drawn, accepted, and indorsed by the same parties, and that this last bill of exchange was the only one then outstanding and unpaid, upon which Carroll was an indorser ; and finally, that the business of the plaintiff in error was then becoming prosperous, and he should no longer require Carroll's indorsement.

All these representations are negatived, except the first; in respect to which it is simply said, that his son, the acceptor, was not then " engaged in an extensive spoke manufacturing business."   In view of the rule already stated, all that part of these representations which refers to what he could do with the bill, and what he would do with the proceeds, may be disposed of with a single remark.   In the worst possible sense that can .be given them, they simply import an expectation which he did not believe would be realized, and a promise which he did not intend to fulfill. It is almost equally certain, that nothing can be predicated upon the representation of the character of the acceptor's business, and his ability to pay the bill.   To constitute a false pretense, within the purview of the statute, the representation must be such as, either with or without the coöperation of other causes, had a decisive influence upon the mind of the party defrauded, so that, without its weight, he would not have parted with his property. 19 Pick. R. 183.   Now, the only possible thing in this representation, which could have influenced Carroll in giving his indorsement, is the statement that the acceptor was then, and would continue to be, abundantly able to pay the bill ; and this

is nowhere negatived in the information. It is entirely consistent with all its averments, that the acceptor was engaged in, the spoke manufacturing business, and was then, and continued to be, perfectly responsible ; but it is denied that this business was *extensive.*

What it would require to make this business *extensive,* or how much that might add to the responsibility of the person pursuing it, it is not easy to determine ; but it will be readily admitted that a man might be as good for $400 without doing such a business, as with it. The representation that the business of the accused was " then *becoming* prosperous," and the denial that it was " then and there prosperous," needs no further remark.

The averment of the information that the accused represented that he had paid off and taken up all other bills upon which Carroll was indorser, was certainly a material inducement to give his indorsement upon the particular bill; and, if it was averred with the requisite certainty, would undoubtedly bring the case within the statute.

But what other bills were left outstanding ? Who were the parties and for what amounts ? These facts must have been specifically proved to have warranted a conviction ; and yet, the information contains nothing definite upon the subject.

" The nature and cause of the accusation " are not sufficiently stated to enable the accused to know what he might expect to meet upon the trial ; and it is neither consistent with general principles or constitutional safeguards, to allow a man to be thus put to trial upon a criminal charge in the dark. Upon the whole, we are all of the opinion that the information is insufficient, and that the judgment should be reversed.

We have not found it necessary to determine whether procuring by false pretenses, the signature of a party to a negotiable promissory note or bill of exchange, which he is ultimately compelled to pay, is an offense within the statute or not ; and we do not wish to be understood as expressing any opinion upon that question.

*Judgment reversed.*