White, J.
On account of the public interests involved in the question raised in this case, we have allowed it, contrary to the usual practice, to be brought before this court directly from the probate court.
The question is, whether the prosecution and sentence of the plaintiff in error in the police court of Cincinnati, before the acting police, judge, was coram non judice, and, therefore, a nullity.
If this question is to be answered in the affirmative, the judgment of the probate court, in the proceeding on habeas corpus, refusing to discharge the plaintiff in error, and remanding him to custody, must be reversed; otherwise the judgment of the probate court must be affirmed.
The jurisdiction and powers of police courts are defined in chap. 13 of the municipal code. 66 O. L. 176. Their jurisdiction embraces municipal offences, and certain specified offences against the laws of the State.
Section 171 provides : “The police court shall always be *615 open for business, but may adjourn from day to day, or from time to time; and the mode in which business shall be brought before the court shall be fixed by ordinance of the city council, or the rule of the court.”
Section 174 is as follows : “ In the absence, inability or disability of the [police] judge, it shall be lawful for the mayor to select a reputable member of the bar, residing within the city, to hold said court, and for the time being such person shall have the jurisdiction and powers conferred upon judges of police courts, and shall be styled ‘ acting police judge,’ in which style he shall sign all process and records during the time he shall serve, and shall perform all other official acts pertaining to said office.”
By section 175, before entering on the discharge of his duties, he is required to take “ an oath to support the constitution of the United States, the constitution and laws of the State of Ohio, the charter and ordinances of the city, and an oath of office.”
By section 61 it is provided that “the officers of cities of the first class shall consist of a mayor, solicitor, treasurer, street commissioner, police judge, prosecuting attorney of the police court, clerk of the police court, all of whom shall be elected,” etc.
The ground on which the sentence pronounced by the acting police judge is claimed to be corcim non judice, is, that section 174 of the code under which he was appointed is in conflict with §§ 10 and 13 of art. 4 of the constitution, which declare that all judges, other than those provided for in the constitution, shall be elected by the electors of the judicial district for which they may be created ; and, in case of vacancy in the office of a judge, such vacancy shall be filled by appointment by the governor.
We do not find it necessary to decide the question here made as to the constitutionality of the section of the statute authorizing the mayor, in the specified contingencies, to appoint a judge for the police court.
If the acting judge, as he is styled, was a judge de facto, *616 his judgments would be as unquestionable, in the collateral proceeding by habeas corpus, as if he were a judge de Jure.
The legal existence of the police court, or of the office of police judge, irrespective of whether there was an incumbent of the office, cannot be doubted. No question is made, nor can be, as to the authority of the legislature in creating the court or the judicial office. In Dillingham v. The State, (5 Ohio St. 281,) it was held that the police court of Cincinnati, established under the municipal corporation act of May 3, 1852, and which was invested with a similar jurisdiction to that of the present police court, was one of the courts inferior to the supreme court, which, by the constitution, the general assembly were authorized to establish. The same doctrine was held in the case of the Steamboat Northern Indiana v. Millikin, (7 Ohio St. 384,) in regard to the office of mayor of Toledo. In both these cases, however, the jurisdiction drawn in question was not of matters arising under the municipal ordinances. Whether an officer or court exercising a jurisdiction limited to cases arising under such ordinances, would come within the provisions of the constitution referred to, we do not here deem it necessary to inquire. In this case we regard the acting police judge in the light in which he is regarded by the statute, as commissioned or appointed to hold the police court, and to exercise all the jurisdiction pertaining thereto. This is the view in which the case has been submitted in argument.
It is to be observed that the question raised is not an inquiry into the jurisdiction of the court, but an inquiry into the right of the judge to hold the office, which is a question entirely distinct from that of the jurisdiction of the court over the offence. 9 Wis. R. 267.
Assuming, then, for the purposes of this case, (without deciding the question,) that the legislature, under the circumstances mentioned in the statute, could not, constitutionally, authorize the mayor to appoint a police judge, the question is, was the person assuming to discharge the duties of the office under such an appointment, and being other *617 wise qualified, in accordance with the statute, a judge de facto 9
We attach no importance to the fact that he is required to style himself officially as “ acting police judge.” This is merely descriptive of the temporary character of his term. The legal effect of his official acts would not have been different if he had been required to style himself “ police judge.”
An officer de facto is variously defined or described in the .authorities.
Lord Ellenborough, in The King v. The Corporation of Bedford Level, (6 East. 369;) quoting substantially the language of Lord Holt, in Parker v. Kett, (1 Lord Raymond, 660,) says : “ An officer de facto is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law.”
In Miner’s Abridgement, (vol. 16, p. 114,) it is said: “ Acts done by an officer de facto, and not de jure, are good; as if one being created bishop, the former bishop not being deprived or removed, admits one to a benefice upon presentation, or collates by lapse, these are good, and not avoidable. For the law favors acts of one in a reputed authority, and the inferior shall never enquire if his authority is lawful.”
In Brown v. Lent, (37 Maine, 428,) the act of a justice •of the peace in acknowledging a deed after his commission had expired, was drawn in question, and held valid. In the opinion, an officer defacto is described as “ one who actually performs the duties of the office with apparent right, under ■claim of color of appointment or election. He is not an officer de jure, because not in all respects qualified and authorized to exercise the office ; nor a usurper who presumes to act officially, without any just pretense or color of title. The mere claim to be a public officer will not constitute one an officer de facto. There must be at least a fair color of right, or an acquiescence by the public in his official acts so long that he may be presumed to act as an officer by the *618 right of election or appointment.” See, also, Burk v. Elliott, 4 Iredell’s L. R. 355.
The authorities are numerous in which similar language has been used.
The direct question in this case is, whether the reputed, or colorable authority required to constitute an officer de facto can be derived from an unconstitutional statute.
The claim that it cannot, seems to be based on the idea that such authority can only emanate from a person or body legally competent to invest the officer with a good title to the office. We do not understand the principle to be so limited. We find no authorities maintaining such limitation, while we find a number holding the contrary. Fowler v. Bebee et al. 9 Mass. 231; Commonwealth v. Fowler, 10 Mass. 290.
The true doctrine seems to be, that it is sufficient if the officer holds the office under some power having color of authority to appoint; and that a statute, though it should be found repugnant to the constitution, will give such color.
In Taylor v. Shrine, (3 Brevard, 516,) an act of the legislature authorized the governor to appoint and commission some fit and proper person to sit as judge, etc., in case any of the judges on circuit should happen to be sick or become indisposed, and unable to hold court in his circuit. The presiding judge, in the case then in question, had been appointed by the governor, pursuant to the provisions of that act. After the decree in the case had been rendered, the act authorizing the appointment of such judge was declared void, as being in conflict with the constitution. The court say: “ The only question now is, whether all the acts of the judge so appointed are necessarily void. The judge, in this case, acted under color of legal authority; he had a commission under the seal of the State, signed by the governor, and authorized by an act of the legislature; no objections were made to his authority at the time the decree was given. The public acts of officers de facto are often valid, though the authority under which they act is void.”
In Brown v. O'Connell, (36 Conn. 432,) an act of the *619 legislature authorizing the appointment of a judge of the police court by the common council of the city of Hartford was held void, on the ground that the appointing power could not, constitutionally, be conferred upon the common council; but the person thus appointed was declared to be a judge de facto, and it was held that a recognizance entered into before him in the police court for the appearance of a prisoner was valid.
In the case of The State ex rel. Attorney General v. Messmore, which was a proceeding in quo warranto before the supreme court of Wisconsin, the defendant was charged with unlawfully usurping the office of judge of the sixth judicial circuit in that State. The defendant claimed to have been duly appointed to the office by the governor, under an act of the legislature. The same act under which he was appointed assumed to transfer the rightful judge of the circuit to another. The court held that so much of the act as undertook to transfer the judge of the sixth circuit to another, and to authorize the governor to appoint another judge for the sixth circuit, was unwarranted by the constitution, and void; and judgment of ouster was rendered against the defendant. 14 Wis. R. 164. Yet in the subsequent case of The State v. Bloom, where the authority of the appointee of the governor to hold court and pronounce sentence, while he assumed to discharge the duties of judge, was drawn in question, collaterally, in a proceeding in habeas corpus, he was held to be a judge de facto. 17 Wis. R. 521.
To the same effect is the opinion of the supreme court of Illinois in the case of The People ex rel. Ballou v. Bangs, 24 Ill. R. 184.
The judgment of the probate court is affirmed.
Welch, C. J., and Day, McIlvaine and West, JJ., concurred.