BeadbuRY, J.
The only question arising on the record is the constitutionality of that provision of section 7816, Revised Statutes, which requires the court, where, upon a charge of murder, the accused confess his guilt in open court, to “ examine witnesses and determine the degree of the crime and pronounce sentence accordingly.”
The record discloses that the plaintiff in error, voluntarily, by the advice of counsel, and after being cautioned by the court, entered a plea of guilty, and then, without objection or protest, permitted the court of common pleas to hear evidence offered by the state, and submitted evidence himself, tending to show the degree of the crime he had committed. That this action of the court was warranted, by the statute above quoted, is clear. Counsel for plaintiff in error contends, however, that the general assembly transcended its constitutional powers in enacting that statute. That the right, upon an indictment for a felony, especially if capital, to be tried by a jury, is so sacred, that the accused could not waive it, even when authorized by a statute enacted by the legislature for that purpose.
The denial, in criminal cases, of the power of waiver, has, in many instances, been carried to an extreme, if not absurd, length. The doctrine had its origin at a period in the history of the law of England when offenses that would now be regarded as comparatively trivial, were, upon conviction, visited with death, and when the criminal procedure was as crude and imperfect as the criminal code was harsh, the accused being allowed upon the trial of an issue of not guilty, neither counsel nor witnesses to aid him in his defense. The judges, frequently more humane than the law, were reluctant in many instances to pronounce the sentence of death prescribed by the statute, and were ready to seize upon any irregularity occurring in the course of the procedure, to save the life of the prisoner when neither the nature of the offense of which he had been convicted, nor the circumstances of its commission, indicated any consid *417 erable depravity or viciousness of character. In addition to this the judge’was, in theory at least, the counsel for the accused, and if, through the act, advice or omission of the judge, the accused was induced to omit making an available objection, or consented to relinquish a right, this was deemed not an act of the accused, but of the court, and the law would not permit the party to suffer for it. Bishop on Cr. Pr. 120. In this state, however, the court is no longer, in fact, the adviser or counsel of the accused; instead, other counsel is guaranteed to him, and if he is indigent, provided at the public expense. He is entitled to compulsory process to secure the attendance of witnesses in his behalf, and may, under the sanction of a judicial oath, if he so chooses, detail to the court and jury every fact or circumstance known to him that may bear on the question of his guilt or innocence. Every reasonable facility is thus provided for a complete and thorough investigation of the charge against .him, which is the surest shield of innocence. Also, the penalties prescribed for violations of our criminal laws are more humanely and reasonably apportioned according to the character and magnitude of the crime to which they are respectively attached. Under this state of the law there can be but little sound reason for maintaining a doctrine, defensible mainly if not solely, by the circumstances under which it originated, and which have long since ceased to exist, and, therefore, as might be expected, courts and legislatures view with diminishing respect that strict ancient doctrine on the subject of waiver in proceedings and trials of even the higher grades of crimes. '
A plea of guilty is not an unusual proceeding in criminal prosecutions. The accused is arraigned to afford him an opportunity either to admit or deny the truth of the accusation. The subsequent proceedings are within his control and depend upon his plea. By a plea of not guilty he denies and puts in issue every material fact alleged in the indictment, thus imposing upon the prosecutor the burden of proving them. 1 Bish. Cr. Pr. 799; 1 Chitty’s Cr. Raw, 471; Wharton’s Cr. Pl. & Pr. 408. People v. Aleck, 61 Cal. 137.
*418 On the other hand a plea of guilty, from an early period in the history of criminal procedure, both in England and in the several states of the Union, has been regarded as an admission of every material fact well pleaded in the indictment, dispensing with the necessity of proving them, and authorizing the court to proceed to judgment. 4 Blackstone 829; 1 Chitty’s Cr. Law, 429; Crow v. The State, 6 Tex. 334; 1 Bish. on Cr. Pr. 795.
It may be true that a court of common pleas in the exercise of its discretion may refuse to accept a plea of guilty of a capital or other infamous offense, or even in a prosecution for a misdemeanor, until it has ascertained by an examination . of witnesses whether or not the accused is of sound mind, and free from the influence of promises and hopes unduly raised on the one hand, and of threats and intimidation wrongfully made or used upon the other. This course was pursued in Massachusetts at an early day in at least one capital case. Commonwealth v. Battis, 1 Mass. 94. But the exercise of this humane discretion by the court, before permitting a plea of guilty to be entered, in no way detracts from the force or effect of the plea when it has been finally accepted.
In the case before the court, the indictment charged upon the accused, both deliberation and premeditation. The plea of guilty was, in its nature, as much a judicial confession of the truth of those two allegations as of any other contained in the indictment, and but for the provisions of section 7316, Revised Statutes, making it the duty of the court to hear witnesses and determine the degree of the offense, would have warranted a capital sentence. That provision, therefore, confers upon the accused a benefit, instead of depriving him of a right, by forbidding that extreme sentence, which would otherwise follow his plea, until the court hears evidence and ascertains that it is warranted by the facts as well as by the plea.
The contention made on behalf of the plaintiff in error, as we understand it, goes, however, a step further. It is insisted that the framers of the constitution of 1851 intended to make the punishment for crime, at least in its higher *419 grades, an act of society, to be accomplished only through the intervention of a jury, the special representatives of society. This doctrine would exclude a plea of guilty, and force upon the accused as well as the state a trial by jury to establish facts about which there was no dispute.
It was, no doubt, competent for the framers of the constitution to provide that no person shall be convicted or punished for an offence by his own confession, or in any other mode than by a trial by jury; but the history of the struggle by which the right to trial by jury was established, does not afford sufficient ground to require us to construe a constitutional provision, that in terms merely guarantees to the accused a right to a trial by jury, as absolutely prohibiting any other mode of trial, even with the consent of the accused. The only provisions in the constitution of 1851, of this state, relating to trial by jury, are found in sections 5 and 10 of the bill of rights. Section 5 provides simply that “The right of trial by jury shall be inviolate,” while section 10 provides that “ In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury.”
The same provisions of the constitution that secures a trial by jury to the accused in capital cases, also secures it to one charged with a misdemeanor, punishable with imprisonment only. Section 10, Art. 1. The constitutional guaranty in the one case is no stronger than in the other, and this court very soon after the adoption of the constitution held that, in a prosecution for a misdemeanor: “The constitutional right of trial by jury is not infringed when the option is given to the accused to have the issue tried by the court or the jury, and he submits the cause to the court, Dillingham v. The State, 5 Ohio St., 280; Dailey v. The State, 4 Ohio St., 57. There is no necessary 'conflict between these cases and that of Williams and Haynes v. The State, 12 Ohio St., 622. In the latter case the plaintiffs in error were indicted for alter *420 ing bank notes, and pleading not guilty, they waived a jury trial and consented to be tried by the court; they were convicted and sentenced to imprisonment in the penitentiary. The attorney-general submitted to a reversal of the judgment and sentence upon the ground “that upon the trial of an issue raised by a plea of not guilty, in the higher grades of crime, it is not in the power of the accused to waive a trial by jury, and, by consent, submit to have the facts found by the court, so as to authorize a legal judgment and sentence upon such finding.” The court neither gave a reason nor cited an authority for the proposition. The case was no doubt correctly decided, for whether the defendants could or could not waive a trial by jury in a prosecution of that character, the court of common pleas had no authority to try the case without one. It was a mode of trial unknown to the law. The legislature had not clothed the court with that form of jurisdiction, and no act or consent of the accused could create or confer a jurisdiction not established by law. The question would have been very different had the general assembly by statute, authorized the court, with the consent of the accused, to hear the evidence and render judgment accordingly, and the record had disclosed their consent, The power of the court to hear evidence and determine the degree of the crime is maintained m Pennsylvania. Jones v. Commonwealth, 75 Penn. St., 403.
California has a statute similar to the provisions of section 7316, Revised Statutes, now under consideration, and the Supreme Court of that state has held that the examination after a plea of guilty to an indictment for murder, to ascertain the degree of the crime, is not a trial, and the legality of the inquiry was sustained. People v. Noll, 20 Cal. 164. And in People v. Lennox, 67 Cal. 113, it was held that a plea of guilty in a prosecution for murder, is a waiver of trial by jury.
But whatever may be the rule elsewhere, in this state all legislative power is, by the constitution of 1851, vested in the general assembly, (Section 1, Article II,) subject of course to any limitations that may be found in other parts of that instrument. It is only necessary, therefore, in order *421 to determine whether in any particular instance the general assembly has transcended its power, is to enquire (1) if the act is, in its essential character, legislative; and, (2) if so, whether it is prohibited by the constitution; and if it is found to be legislative in its nature, and not prohibited by the constitution, it must be held to be within the power of the general assembly. The power to clothe the courts of the state with jurisdiction to hear and determine causes, is in its character legislative; and, as we have already seen, there is no constitutional prohibition against vesting in the court of common pleas the power to examine witnesses and 'ascertain the degree of the crime, where, in an indictment for murder, the defendant enters a plea of guilty. Therefore it necessarily follows that the proceeding, whether it possesses the essential attributes of a trial or not, authorized by the provisions of section 7316, of the Revised Statutes, now under consideration, is constitutional and valid.

Judgment affirmed.