Voorhees, J.
The case of Albert E, Winnett, plaintiff in error, against the state of Ohio, defendant in error, is in this court on error. The plaintiff contends that the court below erred in overruling a demurrer to the indictment upon which he was tried and convicted. The indictment charged plaintiff in error with obtaining the signature of one Swartz, to a prum- . issory note for two hundred dollars by false pretenses,
The indictment is founded upon section 776, Revised Statutes of Ohio, which provides:
“Whoever, by any false pretense, with intent to defraud, obtains from any person any thing of value, or procures the signature of any person, as maker, indorser, or guarantor thereof, to any bond, bill, receipt, promissory note, draft, or check, or any other evidence of indebtedness, * * * shall, if the value of the property or instrument so procured, etc., is thirty-five dollars or more, be imprisoned in the penitentiary,” etc.
The indictment in this case is drawn upon the above section of the statute, and (omitting formal parts) is as follows:
“The defendant, Albert E. Winnett, about October 7th, 1896, at the county of Stark, and state of Ohio, did unlawfully and falsely pretend, with intent to defraud one Oalvin Swartz, that he wanted to show to one Harmon, who was at his house and a special friend of Winnett, that he, Win-nett, had a good standing in the community of Middle-branch, Ohio, where he, Winnett, lived, and that he had friends there who had confidence in him, who would sign and endorse bankable paper for him; and did further unlawfully and falsely pretend, that he wanted him, Swartz, to make, sign and endorse some promissory notes with him, Winnet, for the purpose aforesaid, and for no other purpose; and that the notes would then and there be left in the possession of him, the said Winnett; that he would keep the said notes in his possession, and he would then destroy *517 them; by which said false pretenses theretofore made by Winnett, he did unlawfully procure the signature of said Swartz as maker to a certain promissory note of the value of two hundred dollars — a copy of the note is set forth in the indictment — whereas in truth and in fact, he, Winnett, did not want to show to said Harmon that he, Winneti, had a good standing in the community of Middlebranch, Ohio, where he lived, and did not want to show that he had friends there who had confidence in him, who would sign and endorse bankable paper for him; that he did not want Swartz to make, sign and endorse some or any promissory notes for bin; for the purpose aforesaid, but did want said signature to said note for the purpose of raising money thereon; nor did he intend said notes would be left in the possession of him, Winnett, nor keep them in bis possession, or destroy the same; and at the time he did pretend as aforesaid, he well knew said false pretenses to be false.”
To constitute the offense described in the statute and set forth in the indictment, it is not sufficient simply to follow the language of the statute. The particular pretense or pretenses by which the signature of the person to the instrument was procured must be specifically stated; and the indictment must aver all the material facts whmh it is necessary to prove to produce a conviction, and with such reasonable certainty as to advise the accused what he' may expect to meet on the trial. Four things must concur, and four distinct averments mush be proved.
First: There must be an intent to defraud.
Second: There must be an actual fraud committed.
Third: False pretenses must be used for the purpose, of •perpetrating the fraud; and
Fourth: The fraud must be accomplished by means of the false pretenses made use of for the purpose, viz., they must be the cause which induced the party to sign the in ■struments or part with his property.
The pretense or pretenses relied upon must relate to a *518 past event, or an existing fact; and any representation or assurance in relation to a future transaction, however false or fraudulent it may be, is not, within the meaning of the statute, a false pretense which lays the foundation for 3 criminal prosecution. Dillingham v. The State, 5 Ohio St., 280, 283; Commonwealth v. Drew, 19 Pick, 179, 185.
Tt is contended on behalf of the state that the intent, the mental operation of the mind of the accused, existing-at the time he procured the signature of Swartz to the note, was an existing fact, and, although such existing intent or mental action was coupled with a promise as to what he would do in the future with the note, would constitute a crime under the statute,
The defendant went to Swartz and requested him to sign a note, pretending he wanted to show.the note to his friend Harmon, who, he represented, was then at his, Winnett's, home. It is not alleged in the indictment that Harmon was not at his home, and his representation was therefore false. Such a statement or pretense would have related to an existing fact. Representing that Harmon was at his house, and in using that pretense for the purpose and with the intent to get the signature of Swartz to the note, and lae did so get it, and it was untrue, this would be a statement or assurance of an existing fact.
What influenced Swartz to sign the note ? It was not that Winnett wanted to show the note to Harmon that induced him to sign the note; but rather his promises that he would retain the note in his possession, and would destroy it, influenced his action. The indictment does not negative the statement that Winnett did not retain the note in his possession or did not destroy it. These are material matters.
But first, was there a pretense or a representation made of a past or existing fact?
An indictment for false pretenses cannot be founded upon an assertion of an.existing intention, although the in *519 tention did not in fact exist; there must be a false repre-sentation as to an existing fact. The People of the State of New York, etc., v. John H. Blanchard, 90 New York, 314, is an authority in point here.
That case, was an indictment for obtaining property under f alse pretenses. The representations alleged to be false-were, that the accused “was agent for Otto Gulick of Utica, and that he wanted to buy eighteen cattle for Gulick, and' that Gulick wanted him to buy for and send him eighteen' cattle; and that he had a contract with Gulick for buying: cattle for him, and Gulick had agreed to pay him $1.00 a' head for buying cattle.” “This”, says the judge announcing the opinion, page 318, “taking this accusation as a whole, and construing it in the ordinary sense and acceptation of the language used, charges a false representation, or agency in the purchase of the cattle for Gulick,. It is impossible to misunderstand the tenor of these representations taken together. They import an agency existing, action desired and intended under such agency, and a compensation of $1.00 a head as a reward for the services rendered.”
But the court says, at page 319,
“Disregarding entirely the alleged claim of agency, two statements were culled from the representations recited in the indictment, and made the sole basis of the conviction. These were, that Blanchard said he wanted to buy eighteen cattle for Otto Gulick, and that Otto Gulick wanted him to buy for him and sent him eighteen cattle; and the meaning attached by the court and jury to these words was that Blanchard represented that he had wanted to buy in his own name and on his own responsibility for Otto Gulick, a customer of his, and that Gulick stood ready as such customer to make the purchase and take the property.”
And continuing, at page 324,
“This brings us to the final question of the nature of this-representation. It declares an intention, and involves a promise. It states a present purpose and design to sell the- *520 cattle, when bought, to Gulick, and a promise to apply the proceeds resulting from such sale to the payment of the post dated check. ‘I am buying for Gulick’, ‘I want these cattle for Otto’, could mean only that the defendant bought with a then present intention of sending them to Gulick. It was a statement of the design and motive of the accused in making the purchase. It represented what was at the time in his mind, and constituted his intention, and so far as it tended to affect or influence the seller, it was essentially a promise, and related to the future, * * * So far as this intention and promise were concerned, the seller necessarily took the risk of its fulfillment. He had to rely alone upon the supposed honesty and integrity of the defendant, and he was cheated not by any false statement of facts, but by reliance upon a promise and intention not meant to be fulfilled.”
When Winnett applied to Swartz to get his signature to 'the note, he represented that he wanted to show it to Harmon. Grant that this was false, and that such intention did not exist, he having no such intention in his mind. Under the New York case this was not the representation or assurance of an existing or past fact. Winnett’s declaration and intention to show the note to Harmon was coupled with a promise that after he did so, he would retain the note in his possession or would destroy it. He wanted to get the note to show to Harmon to convince him that he had good 'standing in that community; that his friends would endorse for him. This is what he represented he wanted the note for, and what he intended to do with it; but so far as the intention and promise were concerned,Swartz, like the seller ■of the cattle in the New York case, supra, took the risk that after Winnett had shown the note to Harmon to convince him that he had friends who would indorse for him, he would destroy the note or keep it. Swartz took the responsibility on himself, or the risk, that Winnett would do so. He had to rely upon the supposed honesty and integrity of •the defendant, and he was deceived — not by any false state *521 ment of a fact, but in relying upon a promise and intentiop not meant to be fulfilled.
In Archer’s case (Dearsley’s C. C., 453), Pollock O. B, describes the present case very nearly in his statement, that if a man says: “I want goods for a certain house, and I mean to send them to that house; sell them to me”; that would not be a representation of an existing fact. Other authorities lead to the same conclusion. (2 Whart, Sec. 2118; Wests’ Case, I. D. & B. C. C., 575; Ranney v. People, 22 N. Y., 417; Reg. v. Bates, 3 Cox’s C. C., 201, 203; Reg. v. Jennison, 9 Id., 158; Rex. v. Goodhall, Ruse & Ry, 461; People v. Tompkins, 1 Park Cr., 238).
It is claimed, and this is the contention on the part of the state, that a promise or an intention — the intention existing in the mind of the party, and at the same time, not meant to be fulfilled- — -is an existing fact. We think the authorities will not sustain this contention,
In 12 Am. & Eng. Enc. of Law (2nd Ed.,) on page 811, the author says:
“False representations amounting to mere promises, or professions of intentions, though they induce the defrauded party to part with his property, are not false pretenses, for they have reference to future events”. (Citing in the note among cases from other states, Dillingham v. State, 5 Ohio St., 280.)
In the case of Commonwealth v. Warren, 94 Ky, 615, it is held:
“To constitute the offense of obtaining the signature of another to a writing by false pretense, the false pretense must be a statement of some pretended past occurrence or existing fact, made for the purpose of inducing the party injured to sign the writing. No statement or representation of anything to take place in future is a pretense in the meaning of the statute, whether it be in the form of a promise or not. One who induces another to sign a note upon the representation that it is to be used as a renewal of an existing note upon which the person signing is bound, does *522 not violate the statute, although he intends to and does use the note for another purpose,"
To same effect is Com. v. Moore, 99 Pa. St., 570; s. c. 4 Am. Crim. R., 230.
In the case of Reg. v. Woodman, 14 Cox C. C., 179. s. c., 28 Moak’s Rep., 561;
“An indictment charged one Gregory with having obtained £30 from the prosecutor, Woodman, on the false pretense that he, the said Gregory, then wanted the loan of £30-to enable him to take a public house at Melksham; by means of which said false pretense, the said Gregory did then unlawfully and fraudulently obtain the said sum from the said Samuel Woodman with intent to defraud, Where-as the said Gregory was not then going to take a public house at Melksham, as he the said Gregory well knew. And whereas the said Gregory did not then want a loan of £30 or any money to enable him to take the said house. Held, not a false pretense as to an existing fact."
To a suggestion of the prosecutor, in the above case, “That there the existing fact was the intention of the prisoner,’’ Mellor, J. replied, “How can you define a man’s mind? It is a mere promissory false pretense.’’
In the State v. De Lay, 93 Mo., 98, the indictment charged the defendant with having obtained the signature of the parties to the promissory note set forth in the indictment by falsely pretending that said note was to be used for the purpose of playing a joke upon certain citizens of New Hamberg, and not for the purpose of obtaining any money on it; and that the defendant after thus obtaining the signatures, did use said promissory note for the purpose of obtaining money on it.
“The sole inducement held out to the parties to sign the note was, that it should not be used by defendant as a genuine note, but as a mere sham and pretense; this was a false pretense according to the charge in the indictment, but its falsity consisted in the use to be made of the note after the signatures were obtained; the defendant was guilty of a gross breach of confidence, but not of a criminal false *523 pretense, within the meaning of the statute. The word ‘pretense’, when used in a criminal statute, is to be understood in its legal and technical sense, it having a well defined, as well as a peculiar and appropriate meaning in law. * * * ‘A^false pretense’, says Mr. Bishop, ‘is such a fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adopted to induce the person to whom it is made to part with something of value.’ ” 2 Bishop Crim. Law, section 415. ‘'A promise is not pretense”. Ib. section 419. * * *
‘‘If the indictment had contained the ordinary and proper averment that the parties whose signatures were obtain3d believed, relied upon, or confided in the truth of the false representation in connection with the word induced as used in the indictment, it would have become at once apparent that reliance was, and could only have been, placed in the representation by defendant of the future use he intended to make of the note, as that was the only representation adopted to induce them to part with their signature upon which they could have relied.”
The moving cause that induced Swart? to sign the note for Winnett must have been the promise that he would destroy the note or keep it in his possession, which would render it a harmless instrument; and as it is not alleged in the indictment that he did not keep it in his possession or destroy it, the indictment is fatally defective.
We do not mean to say that the statute in its operation' is limited to cases against which ordinary skill and diligence cannot guard, for one of its principal objects is to protect the weak and credulous from the wiles and stratagems of the artful and cunning. Bartlett v. State of Ohio, 28 Ohio St., 669-670.
To constitute a false pretense within the purview of the statute, the representation must be such as either with or without the co operation of other causes had a decisive influence upon the mind of the party defrauded, so that without its weight he would not have parted with his property.
Welty & Albaugh, for Plaintiff in Error.
Atlee Pomerene, Prosecuting Attorney, and C. C. Bow, for the State.
The only possible thing that could have influenced Swartz in the representation or assurance made to him by Winnett which could have induced him to sign the note, was the statement, that Winnett would keep the note in his possession, after showing it to Harmon, and would destroy it. And this is nowhere negatived in the indictment, It is entirely consistent with all its averments that Winnett still has the note, or has destroyed it as he promised he would. This omission alone would make the indictment defective. Dillingham v. The State of Ohio, 5 Ohio St., 280-284.
The question involved here is a difficult one. We are not entirely free from doubt. In criminal cases where the liberty of an individual is at stake, and there exist in the mind of the court a reasonable doubt as to the criminal liability of the accused, it is the duty of the court to resolve the doubt in his favor. In this case in the light of the authorities and under the circumstances we cannot do otherwise than hold that the indictment under which the plaintiff in error was convicted was insufficient,and the demurrer should have been sustained, and in overruling the demurrer the court of common pleas erred, and that the judgment should be reversed.
We are herejnet with another question. If the indictment had been objected to by motion to quash,and the motion sustained, the subsequent proceedings would be plain enough under Revised Statutes, section 7252. Where the attack is by demurrer, and the demurrer is sustained, there is no alternative but to discharge the defendant, and this will be the order of the court,