## CHARGING FALSE PRETENSES BY BANK OFFICIALS.

Common Pleas Court of Huron County.

STATE v. GIBBS ET AL.

Decided, August 17, 1908.

*Criminal Law—False Pretenses—Charging of, Against Bank Officials—Meaning of the Words "Invest" and "Speculate"—Office of the Innuendo.*

The charge, in an indictment against officers of a bank, that they had been guilty of false pretenses, in that with intent to cheat and defraud they induced and procured persons to deposit in the bank by falsely representing that "we never speculate in stocks; we loan money on real estate; it is solid rock security; we require income producing property," does not bear the meaning ascribed by innuendo, that the bank did not invest its money in stocks and loaned its money only on security of income producing real estate, nor does not follow from the statement upon which the charge is based that the bank loaned all its money on real estate, nor does it appear whether the statement applied to the bank or to the accused individually.

*L. W. Wickham* and *S. M. Young*, for plaintiff.

*A. V. Andrews, Horace Andrews, A. M. Beattie, C. L. Kennan, J. J. Sullivan* and *W. M. Koons,* contra.

DOYLE, J.

Heard on motions to quash.

Criminal causes numbers 7238 and 7240 are against James G. Gibbs and Jay F. Laning for obtaining money under false pretenses. The indictments in form are alike varying only as to persons from whom the money was obtained, the amounts thereof, and the dates when obtained.

The indictments show that Gibbs was president and Laning vice-president of the Ohio Trust Company, a company incorporated under the laws of the state of Ohio, and engaged in the banking business in the city of Norwalk.

It is charged that these men induced and procured the two parties whom defendants are charged with having an intent to cheat and defraud, to deposit money with the Ohio Trust Company.

The false pretenses alleged are:

"We never speculate in stocks; we loan on real estate; it is solid rock security; we require income producing property."

By an innuendo the indictments import to these pretenses the meaning,

"That said the Ohio Trust Company did not invest its money in stocks or loan its money on the security of stocks; that said the Ohio Trust Company loaned its money only on the security of income producing real estate."

The first question then to determine is whether the language alleged to have been used will bear the meaning ascribed to it by the innuendo. This matter is peculiarly one for the court and if the court find that it will bear that meaning, then the question whether such meaning was intended must be submitted to the jury. This rule from Starkie on Slander was adopted by Judge Boynton of the Supreme Court in his opinion in *State* v. *Smily*, 37 Ohio St., 30, 35, and is as applicable in this case as it was in that libel case. The rule is well stated in *Sturl* v. *Blogg*, 10 Q. B., 908.

The word "speculate" means to purchase with the expectation of an advance in price, and of selling with a profit by means of such advance.

"Merchants speculate upon the future price of that in which they deal, and buy and sell accordingly. In other words, they think of and weigh, that is, speculate upon, the probabilities of the coming market and act upon this outlook into the future." Anderson's Law Dic., 961; *Kirkpatrick* v. *Bonsall*, 72 Pa. St., 155, 158.

To a great many people the expression "speculate in stocks" would mean speculative ventures made upon the turn of the prices of the stocks alone with no intent to deal in the stock itself, but merely to risk the difference between the rise and fall of the price, where no capital is invested except what is necessary to cover the difference in price or margin.

The innuendo in these indictments ascribes to the word "speculate," as used by the accused, the meaning of investing in or loaning money on stocks. An investment is the laying out of money with the view of obtaining an income or profit from the thing bought, whether it be an interest in a business, a farm, stocks or

bonds; to place money so that it will be safe and yield a profit (*Neel* v. *Beach*, 92 Pa. St., 221, 226),; to put money out at interest, either by way of loan or of income producing property. *Una* v. *Dodd*, 39 N. J. Eq., 173, 186.

There is a great difference between the meaning of the word "speculate" and the word "invest." Investments can be made in stocks and stocks can be taken as security for loans without the transactions becoming speculations. The Standard Dictionary gives these definitions:

Invest: "To lay out (money or capital) in the purchase of property, especially for permanent use, as opposed to speculation."

Speculate: "To make a purchase or investment that involves a risk of loss, but also offers a chance of considerable profit; make an outlay in the hope of possible gain."

Speculation: "A more or less risky investment of money in expectation of considerable gain, or any business or commercial transaction involving such a use of money, as buying commodities to hold them for a rise in price; as, to deal in futures, commonly called options, is a mode of speculation."

It does not follow that because a man says he does not speculate in stocks, that he means that he does not make investments therein nor loans thereon. There is nothing set forth in the indictment introductory to the alleged false pretense, one of the essential elements of the offense, either explanatory of it, or of the manner in which or the circumstances under which it was made. The meaning ascribed to the alleged false pretenses is not a legal inference therefrom. If there were any other conversation, any correspondence or other circumstances connected with the transaction which led up to the making of the statements set forth in the indictments, that would tend to show that the words were used with that understanding and meaning, then the meaning attributed to them in the indictment could be justified. Those matters, if they existed. should have been set forth so that the court may ascertain if the innuendo is warranted.

There being none of the colloquium set forth except the alleged false pretense, the court is bound to limit its investigation to that alone, and determine whether the meaning attributed to it is correct.

The use of the term "speculate" in the negation must be held to the meaning given it in the innuendo and it can not make good what the indictment otherwise lacks.

It is not the office of an innuendo to add to, enlarge or change the natural sense or import of the language used by the defendants. If the indictments can not be sustained on the natural common meaning of the language they can not be helped by the use of an innuendo which does not naturally follow from the language used. *Bishop* v. *Gazette Co.*, 4 Bull., 1082, affirmed, *Cincinnati Gazette Co.* v. *Bishop*, 10 Am. L. Rec., 488; *Gohen* v. *Volksblatt Co.*, 31 Bull., 111; *State* v. *Cass*, 5 N. P., 381.

The assertion "we loan on real estate," can not, except by forced construction, be construed to mean that the bank did not loan on any other security than real estate. It meant just what its language implies, that the bank did loan money on real estate and that "it is solid rock security." If there were any conversation between the parties leading up to this pretense or any subsequent conversation showing any different meaning, that colloquium, if there were any, should have been set out in the indictment. A loan of a small amount upon real estate security would have been a sufficient fact upon which to predicate the statement that "we loan on real estate." The statement may as well be interpreted to have been made as an item of information, that they or the bank, loaned money on real estate, but required income producing property. The inference which the innuendo makes that the bank loaned all its money on income producing real estate does not follow from the statement, without other conversation in connection with the statement which would explain or elucidate it. The pretenses will not bear the meaning given to them nor will it, standing alone, uncontradicted as to the truthfulness of its literal meaning, be sufficient to support this indictment.

There are no allegations showing whether the statements made applied to the bank or to the accused individually. For all that appears in the statements they might have applied solely to the business methods of the accused.

The natural inquiry is, did they mean that they, as individuals, never speculated in stocks or that the bank never speculated in stocks.

If the first pretense alone is considered it may be as well re-ferable to the individuals as to the bank, if standing alone. The character of the business methods of the officers of a bank is very often as much taken into account as those of the bank by persons dealing with the bank. Individuals may speculate while banks have no right to do so, as is well known. If the essential matters and things in this indictment are to be arrived at by inference, it may, with more reason, be supposed that, if any inquiry were made by the depositors of the bank about whether speculating were done by those connected with the bank, it would be about the officers, rather than about the bank itself. People generally know that banks do not thus transcend their powers, while it is well known that banks are very often injured by the specula-tions of their officers. But the remaining pretenses help out the inference of the state, and taking them all together there may be said to be a fair guess, but not a reasonable certainty, that they referred to the bank. With the allegations that the accused were president and vice-president respectively of the bank as an in-ducement, and the pretenses as set forth for the colloquium would the innuendo given be a reasonable deduction? There is not a direct averment in the indictments, outside of the innuen-dos, that those pretenses were made with reference to the busi-ness methods of the bank. The only grounds then for that in-ference is, that these men were officers of this bank and in the pretense used the pronoun "we" in connection with their man-ner of loaning money. For all that appears in the indictment the men might also have been officers of other institutions mak-ing loans, or have been in the business as individuals on their own account. If the fact be that these pretenses were made with reference to the Ohio Trust Company's methods of doing busi-ness, should not that fact appear in some other manner in the indictment than by an innuendo, which is only a conclusion drawn from foregoing premises set forth in the indictment? While it may not be of any great moment about whom these pre-tenses were made, if they were the inducing cause of the accusers parting with their property, yet the accused are entitled to have the essential facts, making up the various elements of the offense charged against them, set forth. There should be no uncer-tainty to whom these pretenses referred.

If there is any doubt about the persons to whom these statements contained in the pretenses apply, that doubt must be resolved in favor of the accused.

An indictment must aver with reasonable certainty all the material facts which are necessary to be proven to procure a conviction. *Ellars* v. *State,* 25 Ohio St., 385, 388.

Unless these pretenses were made with direct reference to the business methods of the Ohio Trust Company, evidence can not be received to support the charges in the indictment because the entire theory of the draftsman of the indictment, as shown by the instrument, was that these statements pertained to the business methods of the bank.

If the statements in the alleged false pretenses referred to their individual methods of doing business, then the indictments fail in all their negations and the indictments no longer contain facts constituting an offense.

The indictment does not state facts with reference to the making of these statements with such reasonable certainty as to advise the defendants what they may expect to meet on the trial, nor to furnish the court with the requisite data from which to determine whether the defendants or either of them have committed an offense within the statute. *Lamberton* v. *State,* 11 Ohio, 282, 284; *Dillingham* v. *State,* 5 Ohio St., 280, 285; *Redmond* v. *State,* 35 Ohio St., 81, 82; *State* v. *Trisler,* 49 Ohio St., 583.

The Supreme Court of this state has said, in *Redmond* v. *State, supra,* page 82:

"It is a rule of criminal law, based upon sound principles, that every indictment should contain a complete description of the offense charged. It should set forth the facts constituting the offense, so that the accused may have notice of what he is to meet," of the act done, which it behooves him to controvert, "and so that the court, applying the law to the facts charged against him, may see that a crime has been committed."

Judge Ranney, in *Dillingham* v. *State, supra,* page 285, said:

"It is neither consistent with general principles nor constitutional safeguards, to allow a man to be thus put to trial upon a criminal charge in the dark."