### RAILROAD COMPANY v. ORR.

Where .a railroad corporation, by mortgage, whose sufficiency to secure what it is given to secure is doubtful, 'nortgages its property directly to all its bondholders by name, to secure specifically to each the amount due on the bonds to *him*, no one bondholder, even when professing to act in behalf of all bondholders who may come in and contribute to the expenses of the suit, can proceed alone against the company, and ask a sale of the property mortgaged.

He is incapacitated to do this—  ·

1st. Because the sufficiency. of the security being doubtful and it being thus his interest to diminish the amount of debt, in the whole to be paid, all other creditors should have such notice as may enable them to see that on a sale the most possible is got for the property mortgaged.

2d. Because, even in equity, a suit on a written instrument must be brought in the name of all who are formal parties to it, and retain an interest in it.

APPEAL from the District Court for the Middle District of Alabama.

Orr, a citizen of Mississippi, suing for himself and in behalf of all others, holders of bonds of the county of Limestone, in the State of Alabama (secured by a certain mortgage hereinafter specifically described and which the bill set forth), who might come in and contribute to the expenses of the suit, filed a bill in the court below against the said county and " The Nashville and Decatur Railroad Company," both corporations of Alabama.

The bill set forth that in the year 1853 a railroad company, under the name of "The Tennessee and Alabama Central Railroad Company," was incorporated by the legislature of Alabama for the purpose of making and working a railroad within the limits of Limestone County; a further purpose of the incorporation being, however, that the railroad thus incorporated might be connected and ultimately consolidated with railroads in Tennessee; that in 1855 the legislature of Alabama authorized the county of Limestone to subscribe $200,000 to the stock of the said company, and in payment thereof to issue and deliver to the company the bonds of the county to that amount; that the county did issue and deliver such bonds; that in 1858 the company was authorized by the legislature to sell the said bonds, and for the purpose of securing their redemption, to mortgage all its property and franchises; that on the 29th of July, 1858, the company did execute such mortgage, and sold and assigned the said bonds to various persons, and among others to the complainant to the amount of $10,000; that the mortgage, dated as just said, was made between the railroad company on the one part and James McDonald, James Sloss, Booth Jones, and twelve other persons, including the complainant, all named specifically in the mortgage (and in the recital of it given in the bill) and holders, all of them, of the bonds intended to be secured by the mortgage; that the mortgage, after reciting the debts due to each of the said persons, the amounts, manner in which the debt accrued, granted, bargained, and sold all the land which made the bed of the road and its appurtenances to the said James McDonald, James Sloss, Booth Jones, and the twelve others, including the complainant, as security to each person for the payment to each of the bonds held by him; that the complainant, now, at the time of filing his bill, remained the owner of about $6500 of them, of which both the interest and principal remained unpaid; that in 1866 and 1867 "The Tennessee and Alabama Central Railroad Company" was consolidated with other railroad companies, and that the consolidation became known as "The Nashville and Decatur

Railroad Company," and that the property and assets of the former company passed into the hands of the latter; that the complainant presented his bonds for payment to the proper authorities of Limestone County, in 1866, and that payment was refused; and that "The Nashville and Decatur Railroad Company," though fully aware of the default of the county, neglected and refused to provide for the payment of the bonds, and that the rights and interests of the bondholders were greatly endangered. The prayer of the bill was for an account, for a decree requiring the company to pay the amount that should be found to be due to the complainant, for the foreclosure of the mortgage, and the sale of the mortgaged property.

The county of Limestone failed to appear, and a decree *pro confesso* was taken against it. "The Nashville and Decatur Railroad Company" appeared, and demurred for want of proper parties and other causes. The court below overruled the demurrer, and considering, on certain pleas put in, that the case was with the complainant, decreed a sale of the road, &c., unless, within a time named, the company paid the amount due on the complainant's bonds.

On appeal here the question was whether the demurrer was rightfully overruled for want of proper parties.

*Mr. R. T. Merrick, for the appellant; no opposing counsel.*

Mr. Justice HUNT delivered the opinion of the court.

The principal question in the case, and the one upon which the decision is now placed, is whether there are the proper parties present in the suit?

It is a general rule in equity that all parties entitled to litigate the same questions are necessary parties. All persons having an interest, although remote, in the subject-matter of the bill must be made parties, or the bill must be so framed as to give them an opportunity to come in and be made parties.* The principle that all must be made parties

---

* Bailey *v.* Inglee, 2 Paige, 278 ; La Grange *v.* Merrill, 3 Barbour's Chancery, 625.

whose interests may be affected by the decree is only departed from where it becomes extremely difficult or inconvenient to enforce the rule.*

The principle is also well settled that when it appears on the face of the bill that there will be a deficiency in the fund, and that there are other creditors or legatees who are entitled to a ratable distribution with the complainants, and who have a common interest with them, such creditors or legatees should be made parties to the bill, or the suit should be brought by the complainants in behalf of themselves and all others standing in a similar situation, and it should be so stated in the bill.† The rule in the United States courts is thus expressed: "That all persons who have any material interest in the subject of the litigation should be joined as parties, either as complainants or defendants." ‡

The frame of the mortgage now sought to be enforced differs from the ordinary trust-deed or mortgage by which the payment of railroad bonds is secured. A trustee is ordinarily named, to whom the security runs as mortgagee, and the instrument recites that the mortgage is made to him in trust to secure the bonds described to the holders thereof. Here the mortgage is made directly to the persons holding the bonds, who are named, and their several interests described.

The bill does not distinctly allege the insufficiency of the fund to pay all the debts secured by it. It does, however, allege that the county of Limestone, the maker of the bonds, has refused to pay them, that the railroad company neglects to make payment, and that the rights and interests of the bondholders are greatly endangered.

Upon two grounds, therefore, it would seem to be necessary that the other bondholders should be parties to this suit: ·

---

* Wendell *v.* Van Rensselaer, 1 Johnson's Chancery, 344.

† Egberts *v.* Wood, 3 Paige, 517; Mitchell *v.* Lenox, 2 Id. 280; Baldwin *v.* Lawrence, 2 Simons & Stuart, 18.

‡ Mechanics' Bank of Alexandria *v.* Seton, 1 Peters, 299; Story *v.* Livingston, 13 Id. 359.

1st. The adequacy of the security of the mortgage for the payment of all the bonds purporting to be secured by it is quite doubtful. The fund is, to some extent, " *tabula in naufragio.*" It is the interest of every bondholder to diminish the debt of every other bondholder. In so far as he succeeds in doing that, he adds to his own security. Each holder, therefore, should be present, both that he may defend his own claims and that he may attack the other claims should there be just occasion for it. If upon a fair adjustment of the amount of the debts there should be a deficiency in the security, real or apprehended, every one interested should have notice in advance of the time, place, and mode of sale, that he may make timely arrangements to secure a sale of the property at its full value.

2d. It is a rule of general application, both at law and in equity, that a suit upon a written instrument must be brought in the name of all who are formal parties to it, and who retain an interest in it. No reason is shown in this bill to take the case out of the rule. No reason is assigned why the fifteen persons named do not unite in the action. No allegation is made that they have been requested so to unite, and have refused. The general rule is applicable to this action.*

For the cause set forth in the demurrer, to wit, a want of proper parties, the decree must be REVERSED, AND THE CAUSE REMANDED with directions to

DISMISS THE BILL WITHOUT PREJUDICE.

---

* See Ribon *v.* Railroad Companies, 16 Wallace, 450; Shields *v.* Barrow, 17 Howard, 130