# BELT v. UNITED STATES.

CONSTITUTIONAL LAW; TRIAL BY JURY; WAIVER OF JUDGMENTS, COLLATERAL ATTACK UPON.

1. Trial by jury can be validly waived in a criminal case by the accused, in pursuance of a statute authorizing such waiver.
2. Whether the judgment in a criminal case pronounced by the court after waiver of jury trial by the accused, can be collaterally attacked and declared void as unconstitutional, in a subsequent proceeding against the same person, in which the record is sought to be introduced in evidence, *quære*.

No. 327. Submitted June 6, 1894. Decided June 15, 1894.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, holding a criminal term, in a prosecution for a second offense of petit larceny. *Affirmed.*

The COURT in its opinion stated the case as follows:

The appellant, William Belt, *alias* William Jones, was indicted in the Supreme Court of the District of Columbia, holding a criminal court, and convicted on the 20th day of February, A. D. 1894, of a second offense of larceny, and sentenced to three years' imprisonment in the penitentiary. The conviction was under Section 1158 of the Revised Statutes of the United States for the District of Columbia, which provides that "every person convicted of feloniously stealing, taking and carrying away any goods or chattels, or other personal property, of the value of thirty-five dollars or upwards, or any bank note, promissory note, or any other instrument of writing for the payment or delivery of money or other valuable thing, to the amount of thirty-five dollars or upward, shall be sentenced to suffer imprisonment and labor, for the first offense, for a period not less than one nor more than three years, and for the second offense, for a period not less than three nor more than ten years."

At the trial of the case, after proof of the special offense charged against the defendant, the prosecution proceeded to prove that it was the defendant's second offense of the kind, by offering in evidence the record of his previous conviction of the crime of larceny in the Police Court of the District of Columbia on April 8, 1893. To the admission of this record in evidence, objection was made, on the ground that it showed on its face a waiver of the right of trial by jury on the part of the prisoner and a trial and conviction by the court alone without a jury, a method of procedure claimed to be in violation of the Constitution of the United States, and therefore null and void. The objection was overruled, and exception taken; and upon that exception the case has been brought by appeal to this court.

*Mr. James W. Walker* and *Mr. George Kearney* for the appellant:

The act of Congress of July 23, 1892, defining the jurisdiction of the Police Court of this District, is unconstitutional, in that it violates the third section of Art. III of the Constitution of the United States, which says: " The trial of all crimes, except in case of impeachment, shall be by jury." Art. VI of the Amendments did not take away from the accused the inalienable right of trial by jury, which was peremptory at common law. See *U. S.* v. *Taylor*, 11 Fed. Rep. 470, and cases cited; Rawle on the Constitution, 2d Ed., 48.

The paragraph in Art. III of the Constitution, above quoted, differs from Art. VII of the Amendments. In the latter it is the mere right to demand trial by jury in civil cases, which is guaranteed, and the parties may waive that right either by express agreement, or by failing to demand a jury, while the language used in Art. III is peremptory that the trial of all crimes, except in cases of impeachment, *shall* be by jury.

This language includes all the modes, whether with or

without the consent of the parties.  A party may confess his guilt by plea of guilty, and judgment may be passed upon the plea, yet if there is an issue of fact which has to be tried, that trial can only be by jury.  Miller on the Constitution, 499.

The declaration that the trial shall be held in the State where the crime shall have been committed is another evidence of the disposition of the constitutional convention to adhere to what they supposed to be the safeguards of the common law.  It was a part of the common law " that every man charged with a crime should be tried by a jury of the vicinage," etc., etc.  Miller on the Constitution, 502.

In criminal cases the doctrine that the constitutional privileges may be waived must be true to a very limited extent only.  A party may consent to waive rights of property, but the trial and punishment for public offenses are not within the province of individual consent or agreement.  Cooley's Const. Limitations, 182.

We refer to the American and English Encyclopædia of Law, Vol. III, Constitutional Law, 731, Trial by Jury, notes and citations, 733, same.

A trial is a proceeding to investigate disputed facts.  But suppose there are no disputed facts.  The law does not insist on a farce.  By pleading guilty, a prisoner does not waive a jury trial and consent to be tried in some other mode.  He simply dispenses with a trial of any kind.  But surely it does not follow that upon a plea of not guilty a court may take jurisdiction to pass on any disputed facts.

Prior to the adoption of the Constitution of the United States there was no law in existence here but the common law of England and the statutes of Maryland.  After the formation of our present government, Maryland and Virginia held on to the old magisterial system.  They had their quarter sessions, in which a jury was impaneled to try all jury cases.  1 Russell on Crimes, 760, shows that it was not until the ninth year of the reign of George IV in

England, A. D. 1829, long after the adoption of the Constitution of the United States, that an act of the English Parliament was enacted,. authorizing two justices of the peace summarily to try and convict and punish a person charged with misdemeanor, without the intervention of a jury. This Act of Parliament of 1829 was never in force in America. These misdemeanors had always been punished by fine or imprisonment, or both, at the discretion of the court. The enormity of the offence depended upon the circumstances, and upon conviction an English subject might have been deprived by the King's Justice of liberty and estate, both without limit.   Therefore Magna Charta was enacted. Blackstone's Commentaries, B. IV, Chap. 27, 349 ; Coke's Institutes (Thos. Ed.), Vol. II, Chap. 13.

Since the adoption of the Magna Charta all crimes either by information or indictment were tried by a jury under the common law.

We have searched in vain among the English Reports to find after the days of Magna Charta where a subject was fined or imprisoned by a justice or court without the verdict of a jury (unless the party plead guilty), or unless by some special statute, which in England is omnipotent, and those cases were petit offenses, such as trespassing on private property, killing game, etc., and in every case of larceny a jury trial was had according to the common law.

The Act of July, 23, 1892, provides that the prosecutions in the Police Court shall be on information by the proper officer, and says: " In all prosecutions within the jurisdiction of the said court, in which, according to the Constitution of the United States, the accused should be entitled to a jury trial, the trial *shall* be by jury, unless the accused in open court shall expressly waive such trial," etc.

We claim the act above cited is in violation of the Constitution of the United States and is void, because petit larceny at common law was a felony and was always triable by jury. *In re Fauldan*, 20 D. C. 433. The Police Court

has no jurisdiction to try a person accused of such crime without a jury, even though the accused waive that right. *United States* v. *Jackson,* 20 D. C. 424.

And in support of the general principles laid down, we refer to the case of *Callan* v. *Wilson,* 127 U. S. 540.

We hold that the record of the Police Court, a copy of which is herewith filed and was in evidence in the trial, is not sufficient in law to fully establish the fact, as it was only secondary evidence when the information upon which he was tried might have been produced.

*Mr. A. A. Birney,* United States Attorney, and *Mr. Charles H. Arms,* Assistant, for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

The main question in the case, and that which has been ably and earnestly pressed upon our attention, is whether the constitutional requirement of trial by jury in criminal cases can be validly waived by an accused person, in pursuance of a statute that authorizes such waiver ; and a more important question in the present administration of our criminal jurisprudence there could scarcely be presented.

There is also another question involved that seems not to have been considered by counsel on either side, but which we should not for that reason ignore, and that is, whether the validity of a record of this character can be collaterally questioned as is sought to be done here. We regard it as settled by the Supreme Court of the United States that in civil causes no such collateral attack could be sustained. In the case of *Maxwell* v. *Stewart,* 21 Wall. 71, Mr. Chief Justice Waite, speaking for that court, says: "The fourth objection is to the effect that the judgment in the Kansas court was void because the cause was tried by the court without the waiver of a trial by jury entered upon the journal. Whatever might be the effect of this omission in a proceeding to obtain a reversal or vacation of the judgment, it is very certain that it does not render the judgment void. At

most, it is only error, and cannot be taken advantage of collaterally." And this rule has been uniformly maintained by that high tribunal. No error, however serious and however apparent it may be, can be held to render a judgment void in a collateral proceeding. Nothing will be permitted to have that effect but total absence of jurisdiction in the court that rendered it. *Williamson* v. *Berry*, 8 How. 495; *Thompson* v. *Whitman*, 18 Wall. 475; *Thompson* v. *Tolmie*, 2 Pet. 157; *Provident, &c., Society* v. *Ford*, 114 U. S. 635; *Trust Co.* v. *Southern, &c., Co.*, 130 U. S. 565. And the principle would seem to be as applicable to criminal as to civil cases.

But this question in the present instance may be regarded as so bound up with the main question in the case that the consideration of it may well be subordinated to the latter. What may be merely error or irregularity in a civil cause might be regarded as a jurisdictional matter in criminal causes, in view of the different nature and character of the proceedings.

The question of the waiver of constitutional rights by an accused person is an exceedingly vexed question and has given rise to a great contrariety of decision. It is one on which, in the present instance at least, we can derive no great light from the jurisprudence of England. For, notwithstanding that the right of trial by jury is supposed to have been consecrated for all time by Magna Charta, neither Magna Charta nor any other charter of English civil rights is beyond regulation, or even total abrogation, by a simple act of Parliament. The measurement of the validity of ordinary statutory enactment by comparison with the standard of fundamental and practically unchangeable organic law, is something unknown to the courts of the country from which we have derived the great body of our common law. And in our own Federal Union of States, while there is a kindred resemblance in the guarantees of personal right that permeate all our constitutions, both State and Federal, yet there is also sufficient verbal distinctiveness and

differentiation of terms as to give occasion for great difference of judicial decision.

That there are rights and immunities secured by our Federal Constitution which may be waived in the courts has been repeatedly decided by the Supreme Court of the United States, and may be regarded as well settled law. *Shutte* v. *Thompson*, 15 Wall. 151; *Beers* v. *Arkansas*, 20 How. 527; *Clark* v. *Barnard*, 108 U. S. 436. The rights and immunities that may be so waived are those that are personal in their nature, and are intended merely for the benefit of the individual, as distinguished from the general interests of society. Cooley's Constitutional Limitations, Chap. 7, 181; *Cancemi* v. *People*, 18 N. Y. 128. Thus it has been held that in civil cases a jury may be waived and a trial had before the court, without any statute whatever to authorize such proceedings. *Kearney* v. *Case*, 12 Wall. 275; *Flanders* v. *Tweed*, 9 Wall. 425; *Kelsey* v. *Forsyth*, 21 How. 85; *Suydam* v. *Williamson*, 20 How. 427; *Guild* v. *Frontin*, 18 How. 135; *Bank* v. *Okely*, 4 Wheat. 235. So, in criminal cases, while the Constitution guarantees to an accused person the right to be confronted by the witnesses against him, it has been held that he may waive this right and consent to the reading of a deposition in evidence. *State* v. *O'Connor*, 65 Mo. 374; *State* v. *Polson*, 29 Iowa, 133; *United States* v. *Sacramento*, 2 Mon. 239; *People* v. *Murray*, 52 Mich. 288. Similarly, the Constitution guarantees to every person accused of crime a speedy and impartial trial; and yet no one will question the validity of a postponement of trial at the request of the accused person himself. Nor can it be now questioned that a motion by him for a new trial, if granted, will operate as a waiver of the constitutional prohibition that "no person shall be twice put in jeopardy for the same offense."

In all the cases, however, in which a waiver of constitutional right by an accused person has been sustained, the waiver has been merely of a formal matter, or else has been

in the interest of the accused. And the rule is inflexibly maintained that nothing can be waived which is jurisdictional or fundamental, or the observance of which is required by public policy. Consequently, the overwhelming weight of authority seems to be that, in the absence of express statutory authority no accused person can waive the right of trial by jury, in a criminal case, and elect to be tried by the court. *Cancemi* v. *The People*, 18 N. Y. 128; *Hill* v. *The People*, 16 Mich. 351; *Work* v. *State*, 2 Ohio Stat. 296; Cooley's Const. Limitations, Chap. X, 319.

As Mr. Justice Cooley says, in his excellent work on Constitutional Limitations, the infirmity of this proceeding would consist in the fact that the tribunal so created "would be one unknown to the law, created by mere voluntary act of the parties, and would be in effect an attempt to submit to a species of arbitration the question whether the accused has been guilty of an offense against the State." Cooley's Constitutional Limitations, Chap. X, 319. Indeed, the effect of waiver in all cases would seem to be based upon consent. In civil cases it is plainly so ; and inasmuch as, in general, parties may make what agreements they please about their private rights, there is no reason why they may not enter into an agreement wherein one waives some privilege or immunity. But it is equally plain that in criminal cases this consent is wanting. The State has, by its organic law or otherwise, determined the tribunal by which criminal charges against those subject to its jurisdiction shall be tried ; and it is not competent for its prosecuting officers to ignore that determination and to enter into unauthorized arrangements with an accused party to substitute a referee in the place of the constitutional or statutory tribunal. Not only public policy, but the letter and the spirit of the law forbid such arrangements.

We are here, however, confronted with a different problem. The legislature has given the consent which before was withheld. The public policy which heretofore precluded the

waiver of the constitutional right of trial by jury has now found radically different expression in specific legislative enactment; for there can be no public policy antagonistic to express legislative enactment. By an act passed July 23, 1892, Congress provided :

" That prosecutions in the Police Court (of the District of Columbia) shall be on information by the proper prosecuting officer. In all prosecutions within the jurisdiction of said court, in which, according to the Constitution of the United States, the accused would be entitled to a jury trial, the trial shall be by jury, unless the accused shall in open court expressly waive such trial by jury and request to be tried by the judge, in which case the trial shall be by such judge, and the judgment and sentence shall have the same force and effect in all respects as if the same had been entered and pronounced upon the verdict of a jury." 27 Stat. 261.

This provision of law was made in consequence of the decision of the Supreme Court of the United States in the case of *Callan* v. *Wilson*, 127 U. S. 540, in which it was held that a previous statute, (Rev. Stat. for Dist. of Columbia, Section 1064,) which dispensed with trial by jury in the Police Court and compelled accused persons to submit to trial by that court without a jury, was invalid and unconstitutional so far as it was sought to be applied to the trial of offenses which at common law were triable by a jury.

While the predilection of the founders of our governmental system fixed the theory of trial by jury firmly in the Federal organic law, as well as in the Constitutions of all the States, it is a well-known fact that in later years the efficacy of the system of trial by jury, in criminal as well as in civil cases, has been very seriously questioned; and there is undoubtedly a growing sentiment that it should in some way be reformed, if it is to be perpetuated. Dissatisfaction with the system as it exists has thus far found legislative expression mainly in statutory enactments giving suitors in civil

4 Ct. App.—3

cases the right by consent to dispense with trial by jury, and to submit their controversies to the courts without a jury. And such enactments are believed to be now very general throughout the States of the Union, and have been universally accepted as a great relief from the old common law methods. More sparingly, however, and for obvious reasons, has it been sought to import these enactments into the criminal jurisprudence of the country. But they have been adopted by many of the States to a greater or less extent, and it has been found by the general experience that their result has been uniformly beneficial. And now the Congress of the United States, by the statute which has been cited, has inaugurated the same policy for the District of Columbia, as nearly thirty years ago it established the same system in civil cases. It is the constitutionality of this statute which is now called in question.

It is supposed to antagonize the second section of the Third Article of the Constitution, which provides in peremptory terms that " the trial of all crimes shall be by jury." And it is argued that there is a distinction between this peremptory language and the language, more or less permissive, of the Sixth and Seventh Amendments to the Constitution, the former of which provides that "in all criminal cases the accused shall enjoy the right to a speedy and public trial," etc., and the latter of which specifies that " in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." It is claimed that while there may be a waiver of right under these amendments, there can be no waiver of the right secured by the Third Article, and that Congress may not validly authorize any such waiver.

In view of the beneficial results sought to be subserved, and of the change in public sentiment and public policy which we have remarked, we would hesitate under any circumstances to declare unconstitutional an act of Congress which was enacted, not hastily and without due considera-

tion, but with special and express reference to constitutional requirement. The statute is not only an expression of the increasing necessity of dealing summarily with the minor crimes, that harass our society: it is likewise an expression fully justified by experience, of the ability of the courts of law to deal justly with the accused, without the intervention of juries. The theory of the English law was and is, that the courts are the courts of the sovereign, and the jury intervened in them for the protection of the people. Judges and jury alike with us emanate from the people, and the latter are no better guardians of our liberty than the former. The maxim *cessante ratione legis cessat ipsa lex* is applicable here—not that such a maxim may nullify an express constitutional provision, but that it may determine what is or is not in accordance with public policy.

We cannot regard the verbal differences between the Third Article of the Constitution and the Sixth and Seventh Amendments as being of much significance. Plainly all these constitutional provisions were intended to subserve a great public policy, in the perpetuation of a system of trial which was assumed to have been greatly involved in the development of our civil liberty. They were not intended to force that system upon us on all occasions, whether we willed it or not. Trial by jury, after all, is no more than an incident in our judicial system. It is but one of the modes known to the law for the determination of some of the issues that arise in our judicial controversies. It is only one of the instrumentalities of the courts; and like all other instrumentalities dependent upon its efficacy for its perpetuation. If the litigants before a tribunal find it to their interest to dispense with it upon any special occasion, and they distinctly agree to dispense with it for that occasion, and determine the fact in controversy in some other manner, as by the court itself which is to pronounce the final judgment, there is no reason why they should not be permitted so to do. When the state and the individual, in their controversy over the

question of criminal liability on the part of the latter, agree to refer that issue to the court, instead of the jury, and the agreement is the result of the free will of the accused, and the accused has entered into the agreement because he regards it to his advantage so to do, as we must assume it is, it is difficult in reason to see where there is any violation of constitutional right.   Least of all is there such a violation where the party has acquiesced in it, and is not seeking for a reversal of the action.   The appellant in the present instance is not complaining of the action of the Police Court in convicting him of the crime of which he was found guilty in 1892.   He is not seeking to withdraw his waiver, or to have on appeal the benefit of such withdrawal, but merely to determine the effect of a conviction against which no protest was lodged at the time, and which is simply introduced here collaterally, and merely in aggravation of another similar though distinct and independent offense.

It seems to us that the question has been substantially disposed of by the Supreme Court of the United States in the case of *Hallinger* v. *Davis,* 146 U. S. 314, where that court, in an opinion pronounced for it by Mr. Justice Shiras, says:

"Upon the question of the right of one charged with crime to waive a trial by jury, and elect to be tried by the court, when there is a positive legislative enactment giving the right so to do, and conferring power on the court to try the accused in such a case, there are numerous decisions by State courts, upholding the validity of such proceedings. *Dailey* v. *State,* 4 Ohio St. 57; *Dillingham* v. *The State,* 5 Ohio St. 280; *People* v. *Noll,* 20 Cal. 164; *State* v. *Worden,* 46 Conn. 349; *State* v. *Albee,* 61 N. H. 423, 428."

This case of *Hallinger* v. *Davis* arose in New Jersey, where the constitution of the State provided that "the right to trial by jury shall remain inviolate;" and yet it was held by the State court, and affirmed by the Supreme Court of the United States, that the right might be waived whenever the

legislature authorized such waiver, and the accused thought proper to avail himself of the privilege and to make the waiver. To the same effect, in substance, are the cases of *Edwards* v. *The State*, 45 N. J. L. R. 423; *Ward* v. *The People*, 30 Mich. 116; *Connell* v. *State*, 60 Ala. 89; *Murphy* v. *State*, 97 Ind. 580; *State* v. *Sackett*, 39 Minn. 70; *Lavery* v. *State*, 101 Pa. St. 560; *League* v. *State*, 36 Md. 257.

To hold that the statute before us is unconstitutional would be, in our opinion, to set the hands backward on the dial of time, and needlessly to overthrow an important branch of the administration of the criminal law of this District. We do not think that the letter of the Constitution should be so interpreted, in opposition to what we must regard as its spirit. We do not think that the immunity intended to be guaranteed by the Constitution, the right of trial by jury, should be forced upon a person against his will, when no public purpose is to be subserved by the restraint, and when, on the contrary, there is an avowed and openly expressed public policy to be subserved by the acceptance of the waiver. Cases are not wanting, indeed they are unfortunately too numerous, where innocence accused of crime has stood in serious danger from an imbittered and unreflecting local sentiment, and has only been saved from disaster by a trial by the court, upon waiver of a jury. However valuable may be the system of trial by jury, and however essential its preservation may be deemed to the perpetuation of our free institutions, it would be the merest mockery of the freedom which it is sought to perpetuate, if an accused person should be denied the use of that very freedom when he desires to exercise it in his choice of a tribunal, and the State, by its legislature, voicing the sentiment of the people, authorizes the choice. This would be to enforce freedom by the denial of freedom. We cannot think that this was the intention of the founders of the Constitution, and we must therefore affirm the constitutionality of the statute in question.

Being of this opinion, we must hold that the objection made on behalf of the appellant to the record that was introduced in evidence in this case was not well founded; *and consequently the judgment must be affirmed, and it is so ordered.*