WILLIAM SWENNEY *et al.* v. SAMUEL GARED HILL *et al.*

No. 12,822.    (70 Pac. 868.)

SYLLABUS BY THE COURT.

NOTE AND MORTGAGE—*Foreclosure*—*Parties.* If promissory notes be given to one person and a mortgage securing them be given to another, who, by the terms of the latter instrument, is given active powers and authority over the subjects of the mortgage relation, the mortgagee is a necessary party to a suit brought by the payee of the notes to foreclose the mortgage.

Error from Greenwood district court; G. P. AIKMAN, judge. Opinion filed December 6, 1902. Reversed.

*Howard J. Hodgson,* and *Fuller & Jackson,* for plaintiffs in error.

*W. S. Marlin,* for defendants in error.

Swenney v. Hill.

The opinion of the court was delivered by

BURCH, J.: William Swenney and Carrie Swenney executed and delivered to Samuel Gared Hill and William Hazeldine Thorold five certain instruments designated as real-estate first-mortgage bonds, and at the same time, and as part of the same transaction, executed and delivered to the Southern Agency and Investment Company a mortgage upon real estate to secure the payment of such obligations. Each one recited that it was secured by a first mortgage of even date, duly recorded, and provided that principal and interest should be payable at the office of the mortgagee, in Kansas City, Mo. The mortgage recited that the makers were justly indebted to the mortgagee in the sum of the principal of the notes, for a loan of money made by it to them, payable according to the tenor of the notes to Hill and Thorold. The mortgage contained a further stipulation, as follows:

"Said party of the first part hereby agrees to pay all taxes and assessments levied upon said premises when the same are due, and insurance premiums for the amount of insurance hereinafter specified, and all prior liens against said premises, including all judgments against party of the first part, or their grantors before their respective conveyances, whether said premises be considered as a homestead or not, and all sums necessary to protect the title and possession of said premises, so that this mortgage shall be a first lien thereon until all sums hereby secured are fully paid; and if payments are not made as aforesaid, or in case of any breach of any covenant herein contained, then the said party of the second part, or the legal holder or holders of this mortgage, may, without notice, declare the whole sum of money herein secured due and payable at once, with interest thereon at the rate of ten per centum per annum from the date to which interest was last paid, or date of note, if no interest has

been paid, or may elect to pay such taxes, assess-
ments and insurance premiums, and any sums paid
under agreements as aforesaid, and the amounts so
paid shall be a lien on the premises aforesaid, and be
secured by this mortgage, and collected in the same
manner as the principal debt hereby secured, with in-
terest thereon at the rate of ten per cent. per annum.
But whether the legal holder or holders of this mort-
gage elect to pay such taxes, assessments, insurance
premiums, or any of the sums under agreements as
aforesaid, or not, it is distinctly understood that the
legal holder or holders hereof may immediately cause
this mortgage to be foreclosed, and shall be entitled
to immediate possession of the premises, and the rents,
issues and profits thereof, upon breach of any con-
dition, agreement or covenant in this deed contained,
whether express or implied.''

Subsequently, upon a default in the payment of the
interest and principal, Hill and Thorold brought suit
against the Swenneys to recover judgment on the
notes and to foreclose the mortgage. The petition
contained allegations that the plaintiffs were the own-
ers of the notes and mortgage, and the original mort-
gage was incorporated as a part of it. The Southern
Agency and Investment Company, the mortgagee,
was not made a party to the action, and the sole ques-
tion for determination is whether that was necessary
in order to maintain the suit.

The form given to the evidence of the loan may
have been adopted to relieve the payees of all concern
regarding the collection of interest, the protection of
the security, and the determination of a necessity for
bringing a foreclosure suit, or it may have been in
facilitation of some other purpose ; but, whatever the
design, the parties themselves deemed it necessary to
interpose a third party between the note-holders and
the makers, and to give it extensive rights and active
powers over the relationship established. It could,

by advancements for divers important purposes, augment the lien, mature the paper, and institute suit, and its release was necessary to discharge the mortgage of record. The notes might remain in the hands of the payees, or might be transferred to separate individuals unknown to each other; but, in any case, the mortgagee's status and authority remained the same. While it took no title to the mortgaged property, it did take title to the mortgage itself, and did have substantial rights and interests, as a party to the paper, in the subject of the mortgage relation. Its position, therefore, was substantially identical with that of a trustee of an active trust, and the court necessarily could not proceed without its presence as a party to the suit. (9 Encyc. Pl. & Pr. 292, 313; Wilt. Fore. Mortg. § 112; Story, Eq. Pl. [10th ed.] 201.)

The allegation of ownership of the paper by plaintiffs was not sufficient to show an abrogation of the trust relation occupied by the mortgagee. Being a formal party to the paper, and retaining his rights and interests under it in the capacity stated, his joinder in the cause was indispensable. (*Railroad Company v. Orr*, 18 Wall. 471, 21 L. Ed. 810.)

In equity, the trustee under a mortgage or trust deed given as security was always a necessary party to a foreclosure suit brought by the beneficiary, except in a few special instances not material here. The only provisions of the code which bear on the controversy read as follows:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff or who is a necessary party to a complete determination or settlement of the question involved therein." (Section 36; Gen. Stat. 1901, § 4464.)

"The court may determine any controversy between

parties before it when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in.'' (Section 41; Gen. Stat. 1901, § 4469.)

But these sections of the statute simply embody the doctrines of chancery courts in reference to the making of parties to suits. As stated by Chief Justice Horton in *Gerson v. Hanson*, 34 Kan. 590, 592, 9 Pac. 230, 231, ''the rule thus embodied in these provisions of the code is called equitable, and is derived from equity practice, because it is more frequently appealed to in proceedings formerly called equitable.''

While, therefore, the form of the action has been changed, parties who occupy the same relationship to the subject-matter of the suit are as necessary to a complete determination and settlement of the questions involved as before the adoption of the code.

The judgment of the district court is reversed, with direction to sustain the demurrer to the petition.

All the Justices concurring.